# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **KARINA GARCIA, MARIA MATA, YANELLIS LEDEE, Individually And on Behalf All Others Similarly Situated** | ) ) ) ) | **CASE NO: _____** |
| | ) | **ORIGINAL COMPLAINT AS TO** |
| | ) | **KARINA GARCIA, MARIA MATA,** |
| | ) | **YANELLIS LEDEE, Individually And on** |
| **Plaintiffs** | ) | **Behalf of All Others Similarly Situated** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **VIRGINIA COLLEGE, LLC D/B/A BRIGHTWOOD COLLEGE, EDUCATION CORPORATION OF AMERICA, WILLIS STEIN & PARTNERS, L.L.C., STUART C. REED And AARON BARKSDALE,** | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants** | ) | |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

COME NOW, Karina Garcia, Maria Mata and Yanellis Ledee, Plaintiffs, Individually and On Behalf of all Others Similarly Situated, and would respectfully show unto the Court as follows:

1.      Plaintiffs Karina Garcia, Maria Mata and Yanellis Ledee (collectively "Plaintiffs"), by and through their attorneys, bring action individually on behalf of themselves and all others similarly situated against Virginia College, LLC d/b/a Brightwood College, Education Corporation of America, Stuart C. Reed, Willis Stein & Partners, L.L.C., and Aaron Barksdale (collectively "Defendants").

1

## I. PARTIES, JURISDICTION, AND VENUE

2.      Karina Garcia is an individual citizen of Texas residing in Jefferson County, Texas.

3.      Maria Mata is an individual citizen of Texas residing in Jefferson County, Texas.

4.      Yanellis Ledee is an individual citizen of Texas residing in Jefferson County, Texas.

5.      Virginia College, LLC is an Alabama corporation with its principal place of business in Birmingham, Alabama, and which does business within the State of Texas.  Virginia College, LLC may be served with process by serving its registered agent in Texas via Certified Mail, Return Receipt Requested, as follows: National Registered Agents, Inc. located at 1999 Bryan St., Suite 900 in Dallas, Texas 75201.

6.      Education Corporation of America is a corporation with its principal place of business in Birmingham, Alabama, and which does business within the State of Texas.  Education Corporation of America may be served with process by serving its Chief Executive Officer via Certified Mail, Return Receipt Requested at Education Corporation of America's corporate headquarters at 3660 Grandview Parkway, Birmingham, Alabama 35243.

7.      Stuart C. Reed is the Chief Executive Officer of Defendant Education Corporation of America. Stuart C. Reed can be served with process via Certified Mail, Return Receipt Requested at Education Corporation of America's corporate headquarters at 3660 Grandview Parkway, Birmingham, Alabama 35243.

8.      Willis Stein & Partners, L.L.C. is a private equity firm that owns Education Corporation of America.  Defendant Willis Stein & Partners, L.L.C. is an Illinois company with its principal place of business in Chicago, Illinois and may be served with process by serving its Chief Executive Officer, Avy Howard Stein, via Certified Mail, Return Receipt Requested at One North Wacker Drive, Suite 4800, Chicago, IL 60606.

9.    Aaron Barksdale is the president of Education Corporation of America's Brightwood College Beaumont location and can be served with process by serving Education Corporation of America's corporate headquarters via Certified Mail, Return Receipt Requested at 3660 Grandview Parkway, Birmingham, Alabama 35243.

10.    This Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005, Title 28 U.S.C. Section 1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of the Class, because (1) the proposed Class contains over 100 members; (2) members of the proposed class reside across the United States and are therefore diverse from Defendants; and (3) the claims of the putative Class Members exceed $5,000,000 in the aggregate.

11.    This Court has personal jurisdiction over Defendants in Texas under, *inter alia*, the "specific jurisdiction" test because Defendants have intentionally availed themselves of the protection of Texas laws by doing business within Texas, have the requisite minimum contacts with Texas, and because the claims made the basis of this lawsuit arise from Defendants' business activities – namely the sale of educational and vocational courses – within Texas. Defendants could reasonably anticipate being haled into a Texas court, and this Court's exercise of jurisdiction over Defendants does not offend the notions of fair play or substantial justice.  Additionally and/or in the alternative, Defendants' numerous campuses and activities within the State of Texas make them essentially at home here.

12.    Venue is proper in this Court in the Eastern District of Texas under Title 28 U.S.C. Section 1391(a) and (b), because a substantial portion of the events or omissions giving rise to the claims made the basis of this lawsuit took place in this District, and/or because the Defendants are subject to this Court's jurisdiction in this District. Venue is also proper under Title 28 U.S.C. Section 1391(a)(3), because Defendants are subject to personal jurisdiction in this District as they transact

a substantial amount of business in this District.  Indeed, until recently, Defendants ran and operated a business with over 50 students at 10 employees in Beaumont, Texas.

## II. BACKGROUND AND BRIEF OVERVIEW

### a. What is Brightwood College?

13.     Virginia College, LLC is a wholly owned entity of Education Corporation of America that provides a system of for-profit colleges in the United States.  As of 2018, ECA owned seventy-five (75) for-profit college campuses nationwide, including twenty-five (25) Brightwood College campuses.

14.     In September 2015, Virginia College, LLC acquired Texas School of Business.  Two months later, Texas School of Business changed its name to Brightwood College and the Texas Higher Education Coordinating Board confirmed that Brightwood College was authorized to grant associate degrees, grant credits toward degrees, and to use certain protected academic terms in Texas.

15.     According to Brightwood College's 2018-2019 Catalog, Brightwood College is "an institution of higher education dedicated to providing quality programs that integrate curriculum with professional skill development, empowering students to achieve their lifelong personal and professional goals."

16.     Brightwood College provided students with a number of diploma/certificate and degree programs, including but not limited to: (1) business administration; (2) clinical massage therapy; (3) computer networking technology; (4) computer support technician; (5) diagnostic medical sonography/ultrasound; (6) dental assistant; (7) electrical technician; (8) general practice

paralegal; (9) health information technology; (10) healthcare assistant; (11) heating, ventilation, and air conditioning/refrigeration; (12) holistic health practitioner; (13) massage therapy; (14) medical assistant; (15) medical billing and coding specialist; (16) medical office specialist; (17) medical practice management; (18) network support technician; (19) network and system administration; (20) nurse aide; nurse assistant; (21) nursing; (22) occupational therapy assistant; (23) paralegal studies; (24) practical nursing; (25) patient care technician; (26) pharmacy technician; (27) phlebotomy/EKG technician; (28) physical therapist assistant; (29) radiologic technology; (30) respiratory care; (31) therapeutic health technician; (32) vocational training; and (32) x-ray technician.

17.     The tuition and fees vary depending the course title, number of hours, term, and other factors.  The following tables illustrate various tuitions rates and expenses:

| Diagram 1 – Medical Assistant[1] | | | | |
|---|---|---|---|---|
| Academic Year | 1 | | | Total |
| Term | 1 | 2 | 3 | |
| Academic Credit Hour | 21 | 18 | 12 | 51 |
| Tuition | $7,000.00 | $6,000.00 | $4,000.00 | $17,000.00 |
| Technology fee (post enrollment per initial enrollment) | $250.00 | | | $250.00 |
| Total | $7,250.00 | $6,000.00 | $4,000.00 | $17,250.00 |
| Total Cost per academic credit hour excluding technology fee | $333.33 | $333.33 | $333.33 | $333.33 |
| Total cost per academic credit hour with technology fee | $345.24 | $333.33 | $333.33 | $338.24 |

| Diagram 2 – Medical Billing and Coding Specialist[2] | | | | |
|---|---|---|---|---|
| Academic Year | 1 | | | Total |
| Term | 1 | 2 | 3 | |
| Academic Credit Hour | 21 | 18 | 12 | 51 |
| Tuition | $6,664.00 | $5,712.00 | $3,808.00 | $16,184.00 |

---

[1] This tuition chart is provided in the Brightwood College 2018-2019 Catalog for the Beaumont campus location.
[2] This tuition chart is provided in the Brightwood College 2018-2019 Catalog for the Houston campus location.

| Technology fee (post enrollment per initial enrollment) | $250.00 | | | $250.00 |
|---|---|---|---|---|
| Total | $6,914.00 | $5,712.00 | $3,808.00 | $16,434.00 |
| Total Cost per academic credit hour excluding technology fee | $317.33 | $317.33 | $317.33 | $317.33 |
| Total cost per academic credit hour with technology fee | $329.24 | $317.33 | $317.33 | $322.24 |

| Diagram 3 – Pharmacy Technician[3] | | | | |
|---|---|---|---|---|
| Academic Year | 1 | | | Total |
| Term | 1 | 2 | 3 | |
| Academic Credit Hour | 22 | 20.5 | 17 | 59.5 |
| Tuition | $5,764.81 | $5,371.75 | $4,200.00 | $15,591.19 |
| Technology fee (post enrollment per initial enrollment) | $250.00 | | | $250.00 |
| Total | $6,014.81 | $5,371.75 | $4,454.63 | $15,841.19 |
| Total Cost per academic credit hour excluding technology fee | $262.04 | $262.04 | $262.04 | $262.04 |
| Total cost per academic credit hour with technology fee | $273.40 | $262.04 | $262.04 | $266.24 |

### b. The closure of Brightwood College.

18.     In the fall of 2018, Defendant Education Corporation of America announced its plans to close twenty-six (26) campuses – a third of its total – by **early 2020**.  The decision was made because of insufficient demand and financial struggles.

19.     Due to student concerns, Defendants attempted to downplay the situation: Diane Worthington (a spokeswoman for Defendant Education Corporation of America) stated, "The vast majority of currently enrolled students **will have the opportunity to complete their course work and earn their certificates/diplomas or degrees as planned**." (emphasis added).

---

[3] This tuition chart is provided in the Brightwood College 2018-2019 Catalog for the Sacramento campus location.

20.    On December 4, 2018, the Accrediting Council for Independent Colleges and Schools[4]

("ACICS") withdrew, by suspension, the current grants of accreditation of all institutions owned

by Defendant Virginia College, LLC because the company had not resolved concerns over student

progress, student satisfaction, outcomes, certification, licensure, staff turnover, and the company's

inability to meet its financial obligation with the approved payment plan.  Indeed, the ACICS

demonstrated concern about the education outcomes for the approximately 15,000 enrolled

students across all campuses of Defendant Virginia College, LLC.

21.    The following day, on December 5, 2018, Defendant Education Corporation of America

closed all Brightwood College campuses across the country.  Defendant Brightwood College's

CEO and President, Stu Reed, sent an email confirming the decision to close down all campuses:

> *Dear Students,*
>
> *In early fall, we undertook a path to dramatically restructure Education Corporation of America (parent company of your school) in an effort to best posture it for the future. This plan entailed the teach out of 26 of our campuses and then the commitment of capital from our investors additional funds from investors.*
>
> *However, recently, the Department of Education added requirements that made operating our schools more challenging. In addition, last night ACICS suspended our schools' accreditation with intent to withdraw. The uncertainty of these requirements resulted in an inability to acquire additional capital to operate our schools.*
>
> *It is with extreme regret that this series of recent circumstances has forced us to discontinue the operations of our schools. Your campus will close this month. Please contact your Dean or Program Director for the specific closure date of your campus. You will receive credit for all courses that you completed and passed by the closure date. Information on how to request your transcript will be posted at www.ecacolleges.com within the next few weeks. If you do not graduate this month, we encourage you to continue your career training by requesting your transcript and contacting local schools to determine transferability.*

---

[4] The Accrediting Council for Independent Colleges and Schools is the largest national accrediting organization of degree granting institutions.

*This is clearly not the outcome we envisioned for you or our schools, and it with the utmost regret that we inform you of this direction.*

*Stu Reed,*
*President & CEO*

22.     Defendants' decision to abruptly close their campuses down betrayed thousands of students and teachers.  Students were stripped of their opportunity to complete their programs.  These students paid thousands of dollars towards their programs and/or took out student loans and remain in debt.  Thus, many of these students still owe money to the federal government despite losing the opportunity to obtain their degree, certificate, and/or diploma.  Teachers unexpectedly lost their employment.

### c. The Plaintiffs' situations.

23.     **Plaintiff Karina Garcia –** Ms. Garcia signed a contract with Defendants to pursue a 9-month medical assistant program at Brightwood College located in Beaumont, Texas.  Said program's total tuition was $17,250. *See Diagram 1 – Medical Assitant*.  At the time of the campus closures, Ms. Garcia completed three months of said program and paid around $3,300 towards her tuition and books.  Ms. Garcia did not take out a student loan for said program.

24.     **Plaintiff Maria Mata –** Ms. Mata signed a contract with Defendants to pursue a 9-month medical assistant program at Brightwood College located in Beaumont, Texas.  Said program's total tuition was $17,250. *See Diagram 1 – Medical Assitant*.  At the time of the campus closures, Ms. Mata completed seven months of said program and paid around $12,000 towards her tuition and books.  Ms. Mata did not take out a student loan for said program.

25.     **Plaintiff Yanellis Ledee –** Ms. Ledee signed a contract with Defendants to pursue a 9-month medical assistant program at Brightwood College located in Beaumont, Texas.   Said

program's total tuition was $17,250. *See Diagram 1 – Medical Assistant*. At the time of the campus closures, Ms. Ledee completed three months of said program and paid around $7,000 towards her tuition and books. Ms. Ledee did not take out a student loan for said program.

### d. The meeting between Defendants and Plaintiffs.

26.    In September 2018, Plaintiffs (along with other Brightwood College students) met with the following Beaumont Brightwood College faculty members and/or employees: (1) Aaron Barksdale—Campus President; (2) Amanda Broussard Jackson—Academic Dean; (3) Rozephyr Jean—Campus Administrator; and (4) Keith Jones—Student Finance Specialist.

27.    At this meeting, the Defendants' above-mentioned faculty members and/or employees assured Plaintiffs, and other Brightwood students, that the campus would remain open through (at least) their graduation dates. Indeed, Mr. Barksdale promised Plaintiffs they would get a full refund if Defendants shut down the campus before their respective graduation dates.

### III. BRIEF SUMMARY OF THE CLAIMS AND THE REMEDIES SOUGHT

28.    Defendants' denial and refusal to remain open long enough for Plaintiffs and the Proposed Class Members to complete their program and/or course constitutes a breach of contract because Defendants, through the contract with Plaintiffs and the Proposed Class Members, was contractually obligated to provide what was paid for.

29.    Defendants' denial and refusal to (1) remain open long enough for Plaintiffs and the Proposed Class Members to complete their program and/or course, and (2) refund Plaintiffs and the Proposed Class Members' tuition costs constitutes a breach of contract because Defendants, through the contract with Plaintiffs and the Proposed Class Members, was contractually obligated to provide what was paid for. Defendants failed to honor and breached its contractual obligations

to Plaintiffs and the Proposed Class Members, resulting in harm and damages to Plaintiffs and the Proposed Class Members.

30.     In refusing to (1) remain open long enough for Plaintiffs and the Proposed Class Members to complete their program and/or course, and (2) refund Plaintiffs and the Proposed Class Members' tuition costs, Defendants breached the covenant of good faith and fair dealing and acted in bad faith towards Plaintiffs and the Proposed Class Members.  Defendants' conduct demonstrates that their denial of tuition refund was prompted not by honest mistake, bad judgment or negligence, but rather by conscious and deliberate conduct which unfairly frustrated the agreed common purposes and disappointed the reasonable expectations of consumers/students such as Plaintiffs and the Proposed Class Members thereby depriving Plaintiffs and the Proposed Class Members of the benefits of their course and/or program they purchased in reliance on Defendants' representations, advertisements, and marketing.

31.     As shown, Defendants intentionally lead Plaintiffs and the Proposed Class Members to believe they would be able to complete their programs and receive their diplomas, degrees and/or certificate before closure.  Moreover, Defendants intentionally lead Plaintiffs and the Proposed Class Members to believe *if* the campus closed down, Defendants would reimburse Plaintiffs and the Proposed Class Members for all costs.  Plaintiffs and the Proposed Class Members relied on those representations and continued to pay their tuition and other educational costs.  Defendants then knowingly and intentionally closed down all campuses, denying Plaintiffs and the Proposed Class Members their opportunity to complete their course and/or program.  Plaintiffs and the Proposed Class Members were injured as a result of Defendants' fraudulent behavior.

32.     Through written materials and oral communications, Defendants represented (1) only one-third of campuses would close in 2020; (2) Brightwood College in Beaumont would not close

down until, at least, June 2019; (3) Plaintiffs would be able to complete their programs before campus closures; and (4) in the event of an early campus closure, Defendants would reimburse Plaintiffs their tuition and costs. Defendants' misrepresentations were made in the course of Defendants' business and were made with a purpose to affect Plaintiffs' financial decisions. Defendants' misrepresentations were objectively material to Plaintiffs and the reasonable consumer. Defendants failed to exercise reasonable care in communicating these misrepresentations and Plaintiffs were damaged as a proximate cause. Defendants directly benefitted monetarily as a result of these misrepresentations.

33.    A fiduciary duty, created by law and/or contract, existed between Plaintiffs and the Proposed Class Members and Defendants at the time of campus closures. Defendants breached their fiduciary duty by their actions set forth herein and Plaintiffs and the Proposed Class Members were injured as a result. Defendants benefitted from their breach by collecting Plaintiffs and the Proposed Class Members' tuition, refusing the pay it back, and closing down all campuses to save overhead expenses.

34.    Plaintiff X was terminated as a result of the campus closures without case on his or her part. At all material times, Defendants were "employers" and Plaintiff X was an "employee" under the "WARN" Act. The campus closures qualified as a "plant closing" or "mass layoff" under the WARN Act. Thus, Defendants were required to give Plaintiff X at least sixty (60) days prior written notice of his/her termination. Defendants failed to do so. Thus, Defendants violated the WARN Act. As a result, Defendants' failed to pay Plaintiff's wages for sixty (60) working days following his/her termination.

35.    Defendants committed several violations under the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"). At all material times, Plaintiffs constitute as "consumers"

as defined in TEX. BUS. & COM. CODE §17.46(A)(4).  Defendants knowingly and intentionally committed these DTPA violations.  As a result of Defendants' noncompliance with the DTPA, Plaintiffs are entitled to economic damages, which include the amount of the benefits wrongly withheld.  For knowing conduct violations, Plaintiffs ask for three times their economic damages. For intentional conduct violations, Plaintiffs are entitled to their economic damages, and Plaintiffs ask for three times their amount of economic damages.  Plaintiffs are also entitled to court costs and attorney's fees.  TEX. BUS. & COM. CODE ANN. §17.50(b)(1).

36.     Defendants constitute as an "enterprise" under the Federal "RICO" Act and engaged in a pattern of racketeering activities through wires, radio, television promotions, internet marketing, and U.S. mail causing damage and injury to Plaintiffs and the Proposed Class Members. Defendants violated Title 18 U.S.C. Section 1962(a) by receiving money directly and indirectly from a pattern of racketeering activity and used or invested, directly or indirectly, a part of such income or the proceeds of such income, in acquisition of an interest in, or the establishment or operation of, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  As a proximate and direct result of Defendants' wrongful acts and conduct, Plaintiffs and the Proposed Class Members have sustained damages. Plaintiffs and the Proposed Class Members defrauded by Defendants' scheme and fraud are entitled to treble damages, costs of suit, and reasonable attorneys' fees pursuant to Title 18 U.S.C., Section 1964(c).

37.     As a result of the conduct set forth herein, Defendants have been, and will continue to be unjustly enriched at the expense of Plaintiffs and the Proposed Class Members.

### IV. FIRST CAUSE OF ACTION
**(Breach of Contract including the Breach of Expressed Terms and the Implied
Terms – Breach of the Covenant of Good Faith and Fair Dealing)**

38.     Paragraphs 1 through 38 are incorporated by reference.

39.    Contracts existed between Plaintiffs, Proposed Class Members and Defendants.  Plaintiffs and Proposed Class Members entered into agreements with Brightwood College for various programs and/or courses.

40.    Under each contract, Plaintiffs and the Proposed Class Members were required to pay the amount of each program and/or course referenced in each contract.  Plaintiffs' contracts were in full force and effect at the time Defendants closed down their campuses.

41.    All conditions precedent to Defendants' obligation were satisfied.

42.    Defendants breached the terms of their contracts with Plaintiffs and the Proposed Class Members by failing to provide them with the promised products and services as contracted.

43.    Plaintiffs have sustained actual damages as the result of Defendants' breach of contract.

44.    In misrepresenting through its representations that Brightwood College would remain open through at least June of 2019 and in abruptly closing down all of its' campuses, Defendants breached and failed to honor its implied covenant of good faith and fair dealing under Texas law.

45.    The law implies a covenant of good faith and fair dealing in every contract.  Defendants violated this covenant of good faith and fair dealing in its contract with Plaintiffs and Proposed Class Members by, *inter alia*, misrepresenting to Plaintiffs and Proposed Class Members that their campuses would remain open (at least) through the courses currently in progress.  Despite these representations, Defendants closed down all campuses with no forewarnings.

46.    Defendants breached their duty of good faith and fair dealing and acted in bad faith in the following respects:

    a.    Representing through its advertising, marketing, and other representations that the campuses would not close down until (at the earliest) June 2019.

b.      Representing through its advertising, marketing, and other representations that Defendants would close down only one-third of its campuses in 2020.

c.      Acting in such a manner as to damage Plaintiffs and Proposed Class Members and/or committing acts which unjustifiably denied Plaintiffs and Proposed Class Members the benefits to which they were entitled under the Contract.

d.      Failing to provide full and complete training and/or education, as stated in the Contract.

e.      Failing to provide full reimbursement(s) for any and all tuition and costs to Plaintiffs and Proposed Class Members after abruptly closing down all campuses.

f.      Failing to provide adequate notice to Plaintiffs and Proposed Class Members that all campuses would be closed down.

g.      Failing to attempt in good faith to compromise Plaintiffs and Proposed Class Members for their lost money and/or time towards their program(s).

47.    Defendants' bad-faith denial of Plaintiffs and Proposed Class Members' training and/or education was done as part of Defendants' business practices. The Defendants' wrongful conduct was authorized and ratified by its management and was done with disregard of Plaintiffs and Proposed Class Members' rights. Such conduct was done to take advantage of the financially weaker or vulnerable position of Plaintiffs and the Proposed Class Members and constitutes a pattern or practice of misconduct through trickery or deceit to deny Plaintiffs and Proposed Class Members the benefit of their training and/or education.

48.    Plaintiffs and Proposed Class Members performed all, or substantially all, of the significant duties required under their agreements with Defendants.

49.     Defendants did not provide and/or unfairly interfered with the rights of Plaintiffs and Proposed Class Members to receive the benefits under their agreements with Defendants.

50.     Defendants acted with oppression, fraud and malice, including with conscious and willful disregard of the rights of Plaintiffs and Proposed Class Members and to their harm and detriment. Plaintiffs and Proposed Class Members are accordingly entitled to recovery of exemplary and punitive damages.

### V. SECOND CAUSE OF ACTION
**(Fraud, Misrepresentation Deceit, Quantum Meruit, and Promissory Estoppel)**

51.     Paragraphs 1 through 50 are incorporated by reference.

52.     Defendants intentionally, through advertisements and promotion, lead Plaintiffs and Proposed Class Members to believe that they would be able to complete their programs, receive their diploma, degrees and/or certificates, and obtain employment as a result.  Defendants told Plaintiffs and Proposed Class Members that their campuses would be open, at least, through the completion of the paid-for programs and/or courses.  These representations were material and, of course, false.

53.     Plaintiffs and Proposed Class Members relied on those representations.   Moreover, Defendants intended for Plaintiffs and Proposed Class Members to rely on those representations in order to 'dupe' them into purchasing their programs and/or courses before closing down all operations.

54.     Plaintiffs and Proposed Class members were injured as a result of those false and misleading representations.

55.     Defendants knowingly and intentionally denied Plaintiffs and Proposed Class Members their programs, diplomas, degrees and/or certificates, and employment when Defendants closed down all of its campuses one day after losing accreditation.

56.    Defendants' conduct constitutes fraud and deceit.

57.    For Defendants' fraud and deceit, Plaintiffs and Proposed Class Members are entitled to recovery of exemplary and punitive damages.

58.    Through written materials and oral discussions, Defendants represented they were closing one-third of its nationwide campuses in the year of 2020.  Defendants guaranteed their consumers their campuses would remain open through (at least) June 2019.

59.    Defendants' misrepresentations were made in the course of the Defendants' business.

60.    Defendants misrepresentations were supplied and/or conveyed for the purpose of affecting Plaintiffs and the Proposed Class Members' financial decisions.

61.    Defendants failed to exercise reasonable care and/or diligence in communicating their misrepresentations.

62.    Defendants' misrepresentations were objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

63.    Defendants intended that Plaintiffs and the Proposed Class Members would rely on its misrepresentations.

64.    Plaintiffs and Proposed Class Members reasonably and justifiably relied to their detriment on Defendants' misrepresentations.

65.    As a proximate result of Defendants' misrepresentations, Plaintiffs and Proposed Class Members were damaged in an amount to be proven at trial.

66.    Plaintiffs provided valuable services and/or materials to Defendants who accepted the services and/or materials.  Under the circumstances herein, Defendants were notified that Plaintiffs expected to be fully reimbursed and/or provided their programs and/or courses.

67.    Defendants made multiple promises to Plaintiffs described herein.

68.    Plaintiffs reasonably and substantially relied on the promise(s) to their detriment.

69.    Plaintiffs' reliance was foreseeable by Defendants.

70.    Injustice can be avoided only by enforcing Defendants' promise(s) to Plaintiffs.

71.    Defendants directly benefitted from, and were unjustly enriched by, their misrepresentations.

## V. THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

72.    Paragraphs 1 through 67 are incorporated by reference.

73.    Through written materials and oral discussions, Defendants represented they were closing one-third of its nationwide campuses in the year of 2020.  Defendants guaranteed its consumers their campuses would remain open through (at least) June 2019.

74.    Defendants' misrepresentations were made in the course of the Defendants' business.

75.    Defendants misrepresentations were supplied and/or conveyed for the purpose of affecting Plaintiffs and the Proposed Class Members' financial decisions.

76.    Defendants failed to exercise reasonable care and/or diligence in communicating their misrepresentations.

77.    Defendants' misrepresentations were objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

78.    Defendants intended that Plaintiffs and the Proposed Class Members would rely on their misrepresentations.

79.    Plaintiffs and Proposed Class Members reasonably and justifiably relied to their detriment on Defendants' misrepresentations.

80.    As a proximate result of Defendants' misrepresentations, Plaintiffs and Proposed Class Members were damaged in an amount to be proven at trial.

81.    Defendants directly benefitted from, and were unjustly enriched by, their misrepresentations.

## VI. FOURTH CAUSE OF ACTION
### (Breach of fiduciary duty)

82.    Paragraphs 1 through 77 are incorporated by reference.

83.    At all times relevant to this case, a fiduciary relationship created by law and/or contract existed between Plaintiffs, Proposed Class Members, and Defendants.

84.    Moreover, employers owe employees a fiduciary duty during their employment.

85.    Defendants breached their fiduciary duties to Plaintiffs and Proposed Class Members when they abruptly closed down their campuses with no warning to Plaintiffs and Proposed Class Members. The students were stripped of their opportunity to complete and/or continue their programs.  The teachers were stripped of their employment.

86.    Defendants' breach resulted in injury to Plaintiffs and Proposed Class Members.  Plaintiffs and Proposed Class Members lost thousands of dollars, promised jobs, and their education.

87.     Defendants' benefitted from their breach by collecting the tuition paid for by Plaintiffs and Proposed Class members, while failing to provide the paid-for product and cutting overhead by closing down all operations.

## VII. FIFTH CAUSE OF ACTION
### (Defendants' Violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"))

88.     Paragraphs 1 through 83 are incorporated by reference.

89.     All teachers of Brightwood College were terminated on December 5, 2018.  Each of the Proposed Class members are similarly situated to Plaintiffs in respect to his or her rights under the WARN Act.

90.     Defendants discharged Plaintiffs and the Proposed Class members, without cause on his or her part.

91.     Defendants were required by the WARN Act to give the Plaintiffs and Proposed Class Members at least sixty (60) days prior written notice of their respective terminations.

92.     Prior to their terminations, neither the Plaintiff nor Proposed Class Members received any written notice that complied with the requirements of the WARN Act.

93.     At all relevant times, Defendants employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by 20 U.S.C. Section 2101 of WARN.

94.     At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. Section 2101(a)(1) of the WARN Act and 20 C.F.R. Section 639.3(a).

95.     At all relevant times herein, Plaintiffs and Proposed Class Members were "employees" of Defendant as defined by 29 U.S.C. Section 2101 of WARN.

96.     On or about December 5, 2018, Defendants ordered a "plant closing" or "mass layoff" as defined in 29 U.S.C. Section 2101 (3).  The mass layoff of more than 50 workers at a single site of employment occurred when Defendants ordered the closure of all Brightwood College campuses.  All Brightwood College campuses qualify as a "single site" of employment under the WARN Act because all campuses share some connection between sites beyond that of common ownership.

97.     Plaintiffs and Proposed Class Members are "affected employees" as defined by 29 U.S.C. Section 2101 of WARN Act.

98.     Pursuant to Section 2102 of WARN Act, Defendants were required to provide Plaintiffs and Proposed Class Members at least sixty (60) days prior written notice of their terminations.

99.     Defendants failed to give at least sixty (60) days prior written notice to Plaintiffs and Proposed Class Members of their terminations, in violation of WARN Act.

100.    Defendants failed to pay the Plaintiffs and Proposed Class Members their respective wages for sixty (60) working days following their respective terminations.

101.    As a result of Defendants' failure to pay the wages, the Plaintiffs and Proposed Class Members were damaged in an amount equal to the sum of the members' unpaid wages which would have been paid for a period of sixty (60) days after the date of the members' terminations.

### VIII. SIXTH CAUSE OF ACTION
**(Violations of the Texas Deceptive Trade
Practices Consumer Protection Act ("DTPA"))**

102.    Paragraphs 1 through 97 are incorporated by reference.

20

103.    Defendants' conduct constitutes multiple violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").  TEX. BUS. & COM. CODE §17.41-17.63.  All violations of this chapter are made actionable by TEX. BUS. & COM. CODE §17.50(a)(1).

104.    At all material times, Plaintiffs and others similarly situated in Texas, were "consumers" as defined in TEX. BUS. & COM. CODE §17.45(4).

105.    Defendants' failure to disclose information concerning goods or services, as described above, which was known at the time of the transaction, and which was intended to induce Plaintiff into a transaction into which Plaintiff would not have entered had the information been disclosed, constitutes a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(2).

106.    Defendants' misrepresentations and omissions, as described above, caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, constitutes a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(7).

107.    Defendants' advertising goods or services with intent not to sell them as advertised, constitutes as a false, misleading, or deceptive act and practice.   TEX. BUS. & COM. CODE §17.46(b)(9).

108.    Defendants' misrepresentations that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, constitutes as a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(12).

109.    Defendants' failure to disclose information concerning goods or services, as described above, which was known at the time of the transaction, and which was intended to induce Plaintiff into a transaction into which Plaintiff would not have entered had the information been disclosed, constitutes a false, misleading, or deceptive act and practice.  TEX. BUS. & COM. CODE §17.46(b)(24).

110.    As a result of Defendants' noncompliance with the DTPA, Plaintiffs are entitled to economic damages, which include the amount of the benefits wrongly withheld.

111.    For knowing conduct violations, with regard to these breaches of duty, Plaintiffs ask for three times their economic damages.

112.    For intentional conduct violations, with regard to these breaches of duty, Plaintiffs are entitled to their economic damages, and Plaintiffs ask for three times their amount of economic damages.  Plaintiffs are also entitled to court costs and attorney's fees.  TEX. BUS. & COM. CODE ANN. §17.50(b)(1).

### VIII. SEVENTH CAUSE OF ACTION
**(Violations of FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (Racketeering or "RICO") (Title 18, United States Code, Sections 1961, et. seq.))**

113.    Paragraphs 1 through 108 are incorporated by reference.

114.    Defendants constitute an "enterprise" engaged in and affecting interstate and foreign commerce, operating in Texas and throughout the United States. Defendants engaged in a pattern of racketeering activities described herein through such enterprise causing damage and injury to Plaintiffs and Proposed Class Members through the use of wires, radio, television promotions, internet marketing, and the U.S. mail, as well as other fraudulent schemes and artifices to defraud. Defendants conspired with others, including with legal counsel who was willing and agreed to participate in the scheme and fraudulent conduct, and each acted as the agent and on behalf of the other, with Defendants ratifying the acts and conduct of its co-conspirators. Defendants and its co-conspirators acted in concert, as joint tortfeasors.

115.    Defendants violated Title 18 U.S.C. Section 1962(a) by receiving money directly and indirectly from a pattern of racketeering activity and used or invested, directly or indirectly, a part of such income or the proceeds of such income, in acquisition of an interest in, or the establishment

or operation of, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. Additionally, Defendants conducted or participated, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity and conspired to violate the RICO statutes through the use of wire fraud and mail fraud.

116.    On more than two occasions, and over a period of more than four years prior to the filing of this action, Defendants engaged in mail fraud and wire fraud by transmitting and causing fraudulent information to be sent electronically, by mail, and by telephone to persons in Texas. These mailings and the use of wires and electronic transmissions as part of the scheme of fraud constitute a "pattern of racketeering activities" as defined in Title 18, U.S.C., Section 1961.

117.    As a proximate and direct result of Defendants' wrongful acts and conduct, Plaintiffs and Proposed Class Members have sustained damages. Plaintiffs and Proposed Class Members defrauded by Defendants' scheme and fraud are entitled to treble damages, costs of suit, and reasonable attorneys' fees pursuant to Title 18 U.S.C., Section 1964(c).

## XI. EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

118.    Paragraphs 1 through 113 are incorporated by reference.

119.    A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received.

120.    As a result of the conduct described above, Defendants have been, and will continue to be, unjust enriched at the expense of Plaintiffs and the Proposed Class Members.

121.    Defendants have received, and are holding, funds belonging to Plaintiffs and Proposed Class Members which in equity Defendants should not be permitted to keep but should be required to refund Plaintiffs and Proposed Class Members.

## XII. NINTH CAUSE OF ACTION

**(Class Action Claims)**

122.    Paragraphs 1 through 117 are incorporated by reference.

123.    Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b) of the FEDERAL RULES OF CIVIL PROCEDURE. Plaintiffs seek to represent a group of similarly situated persons (the Proposed Class Members), who purchased and/or enrolled in, or taught, one of the various courses and/or programs offered by Defendants which were prematurely terminated due to Defendants' campus closures.

124.    The Proposed Class Members (hereinafter referred to as the "Class" and/or "Class Members") include a class of "students" who purchased course(s) and/or programs from Defendants and a class of "teachers" who were terminated after Defendants' closed down all of its operations.  These classes and sub-classes are further defined as follows:

> **Brightwood Students Class** – All students or enrollees of Brightwood College who paid for a course and/or program from Brightwood College but did not receive that full course and/or program as a result of the December 5, 2018 closing.
>
> Additional sub-class:
>
> **Brightwood Teachers Class** – All persons who were employed as teachers and/or instructors of Brightwood College, Virginia College, LLC and/or Education Corporation of America at the time of the December 5, 2018 closing.

125.    Each of these above-identified proposed class actions may be properly maintained as a class action pursuant to FEDERAL RULE OF CIVIL PROCEDURE 23 because there is a well-defined community of interest in this litigation and each proposed class is easily ascertainable.

126.    Plaintiffs do not know the exact size of each of the above-identified proposed classes, but, given the nature of the claims, and publicly available data with respect to the number of students

enrolled in Brightwood College, based upon good faith information and belief, Plaintiffs plead that the Proposed Class Members as to each class, are so numerous that joinder of all members of these classes is impracticable.

127.    This action involves common questions of law and fact as to each potential class because each Class Member's claim derives from the same alleged deceptive and wrongful scheme and conduct. The common questions of law and fact involved predominate over questions that affect only Plaintiffs or only the individual Proposed Class Members in each proposed class. Thus, proof of a common set of facts will establish the right of each member of the Class to recover. Among the questions of law and fact common to each proposed class are the following:

a.    Whether Defendants engaged in unlawful, unfair or deceptive business practices and/or fraud by falsely advertising, promoting, and fraudulently inducing the class of Brightwood College Students to purchase their respective courses and/or programs.

b.    Whether Defendants omitted or misrepresented material facts in connection with advertising, promotion and sale of the courses and/or programs at issue.

c.    Whether Defendants omitted or misrepresented material facts in connection with the closure of campuses.

d.    Whether Plaintiffs and the class of Brightwood Students, having paid tuition in reliance upon the false and fraudulent advertisements and representations of Defendants, are entitled to judicial relief, including the restitution of the tuition paid along with any other damages.

e.    Whether Plaintiffs and the Proposed Class Members are entitled to recovery from Defendants of damages for breach of contract resulting from Defendants' immediate and/or premature closure of all campuses.

f.    Whether Plaintiffs and the Proposed Class Members are entitled to recovery from Defendants of damages for breach of the covenant of good faith and fair dealing resulting from Defendants' immediate and/or premature closure of all campuses.

h.    Whether Plaintiffs and the Proposed Class Members are entitled to recovery from Defendants of damages for Defendants' bad faith in Defendants' immediate and/or premature closure of all campuses.

25

      i.     Whether Plaintiffs and the class of Brightwood Teachers, being terminated as a result of the campus closures, are entitled to judicial relief, including the wages owed through each respective program and/or course.

      j.     Whether Plaintiffs and the class of Brightwood Teachers, being terminated as a result of the campus closures, are entitled to damages under the WARN Act for the Defendants' failure to provide proper notice.

128.    Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiffs purchased one of Defendants' courses and/or programs and were denied the ability to complete said courses and/or programs.  Plaintiffs and the members of each class sustained similar injuries arising out of Defendants' conduct which took place in Texas and in violation of Texas law. Plaintiffs and the Proposed Class Members sustained the same or substantially similar injuries and damages as the result of Defendants' conduct in violation of Texas law. The injuries and damages of Plaintiffs and each class member in their respective classes were a direct and proximate result of Defendants' wrongful conduct in violation of law as herein alleged.

129.    Plaintiffs will fairly and adequately protect the interests of each Class. Plaintiffs have no interests that conflict with or are antagonistic to the interests of the classes' members. Plaintiffs have retained highly competent and experienced class action attorneys to represent his interests and those of the members of each Class. Plaintiffs' counsel has the necessary financial resources to adequately and vigorously litigate this class actions, including associating with other counsel as necessary, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of each class and will diligently discharge those duties by seeking the maximum possible recovery for each Class.

130.    There is no plain, speedy or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of each Class will tend to establish inconsistent standards of conduct for Plaintiffs and result in the impairment of each Class

member's rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants and will promote consistency and efficiency of adjudication.

131.    The prerequisites to maintaining a class action for injunctive or equitable relief, including restitution, pursuant to FEDERAL RULES OF CIVIL PROCEDURE Rule 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

132.    The prerequisites to maintaining a class action pursuant to FEDERAL RULE OF CIVIL PROCEDURE Rules 23(a) and (b)(3) are met as questions of law or fact common to each class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

133.    Plaintiffs' counsel are unaware that Defendants may or are likely to claim that the class action cannot be maintained because the management of this action would preclude its maintenance as a class action. Plaintiffs' counsel submit that the class action can be maintained because the information necessary to manage the class action is available, including, but not limited to the following:

a.     Defendants had, or have access to, the names, addresses and contact information for all affected Proposed Class Members, which may be used for the purpose of providing notice of the class action.

b.     The amount of tuition paid by each Brightwood Students Class member for each member's respective course and/or program, along with the dates of each payment made are available through the files and records of Defendants.

c.     The amount of wages paid to each Brightwood Teachers Class member for each member's respective course and/or program, along with the dates of each payment made are available through the files and records of Defendants.

134.   Plaintiffs' counsel knows of no difficulty to be encountered in the maintenance of this action so as to preclude its maintenance as a class action.

135.   With respect to restitution as sought in this action for payment of tuition, the remedy of restitution of monies paid for products which are falsely advertised and promoted is well-established including by the Fifth Circuit and the Texas Supreme Court. Defendants' records will identify each class member, the exact amount of tuition and/or wages paid, and the dates such payments were made.

136.   In sum, Plaintiffs will fairly and adequately protect and represent the interests of the Classes. Plaintiffs' interests are aligned with, and not antagonistic to, the interests of the Classes.

## XIII. JURY DEMAND

137.   Plaintiffs hereby demand a trial by jury as to all claims so triable, including their individual claims and their individual relief including exemplary, punitive, and statutory damages, and with respect to all factual issues relating to the actions brought on behalf of Plaintiffs and the Class Action.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants, as follows:

### Class Action Claims

A.    For an order certifying this case as a distinct Class Action under Rules 23(a) and 23(b) of the FEDERAL RULES OF CIVIL PROCEDURE and appointing Plaintiffs and their counsel to represent each Class as described hereinabove;

B.    For an order requiring Defendants to disclose to Plaintiffs' counsel the name, address, telephone number, and school location of all persons potentially within this Class and Sub-class as described hereinabove;

C.    For an order requiring Defendants to disclose to Plaintiffs' counsel the name, address, telephone number, and school location of all persons potentially within the Class as described hereinabove;

D.    For an order requiring Defendants, at Defendants' expense, to bear the expense of the preparation, mailing or other means of transmittal, and all administrative costs associated with the provision of notice (the substance of such notice to be approved by the Court) to potential members of the Class and Sub-class as described hereinabove;

E.    For an order awarding all relief deemed appropriate and proper by the Court pursuant to Texas and federal law, and any other applicable law;

F.    For an injunction and order requiring Defendants to immediately cease and desist from destroying or deleting any student or other relevant information;

G.    For an order awarding Plaintiffs attorneys' fees and costs from Defendants;

H.      For an order awarding Plaintiffs general, special, compensatory, nominal, treble, and/or punitive damages against Defendants;

I.      For an order awarding Plaintiffs pre- and post-judgment interest; and

J.       For an order providing such further relief, including if applicable injunctive relief, restitution, disgorgement and return of funds collected, and all such other and additional relief as this Court deems proper.

### Individual Claims of Plaintiffs

WHEREFORE, Plaintiffs, individually, prays for judgment on his individual claims as follows:

A.      For general and special damages according to proof at trial;

B.      For compensatory damages for mental and emotional distress in an amount according to proof;

C.      For punitive damages to be awarded to Plaintiffs in an amount appropriate to punish and set an example of Defendants to deter further misconduct;

D.      For interest on the actual damages at the legal rate from December __, 2018;

E.      For costs of suit and reasonable attorneys' fees as permitted by law; and

F.      For such other and further relief, including if applicable injunctive relief, restitution, return of tuition, and further relief as the Court may deem just and proper.

Date:   December 12, 2018

Respectfully submitted,

**THE FERGUSON LAW FIRM, LLP**

*/s/ Mark C. Sparks*
Mark Sparks
Texas Bar No. 24000273
mark@thefergusonlawfirm.com
Timothy M. Ferguson
Texas Bar No. 24099479
tferguson@thefergusonlawfirm.com
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700 Phone
(409) 832-9708 Fax