# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **KARINA GARCIA, MARIA** | ) | |
| **MATA, CHLOE BROOKS,** | ) | |
| **ANITA TREVINO, KARLENE** | ) | |
| **CARPENTER, TANISHA** | ) | |
| **WILLIAMS, SAMUEL TORRES,** | ) | |
| **MARLENE BURCH,** | ) | |
| **ROZEPHYR JEAN,** | ) | |
| **Individually and on Behalf** | ) | |
| **All Others Similarly Situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO: 1:18-cv-00621-MAC** |
| | ) | |
| **WILLIS STEIN & PARTNERS,** | ) | |
| **L.L.C., MONROE CAPITAL,** | ) | |
| **LLC, EDUCATION** | ) | |
| **CORPORATION OF AMERICA,** | ) | |
| **VIRGINA COLLEGE, LLC,** | ) | |
| **BRIGHTWOOD COLLEGE,** | ) | |
| **BRIGHTWOOD CAREER** | ) | |
| **INSTITUTE, VIRGINIA** | ) | |
| **COLLEGE, ECOTECH** | ) | |
| **INSTITUTE, STUART C. REED,** | ) | |
| **AVY HOWARD STEIN,** | ) | |
| **THEODORE KOENIG, JACKIE** | ) | |
| **BAUMANN, AND ERIN SHEA** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL
### ARBITRATION AND TO STRIKE PLAINTIFFS' CLASS ACTION CLAIMS

Plaintiffs Karina Garcia, Maria Mata, Chloe Brooks, Anita Trevino, Karlene Carpenter,

Tanisha Williams, Samuel Torres, Marlene Burch, and Rozephyr Jean, Plaintiffs, Individually and

On Behalf of all Others Similarly Situated, by and through their undersigned counsel, hereby respectfully ask this Honorable Court deny Defendants Education Corporation of America ("ECA"), Virginia College, LLC ("Virginia College"), and Stuart C. Reed's (collectively "VC Defendants") motion to compel arbitration and request to strike Plaintiffs' class action claims.

## A. INTRODUCTION

VC Defendants have the cart before the horse. Plaintiffs Karina Garcia, Maria Mata, Chloe Brooks, Anita Trevino, Karlene Carpenter, Tanisha Williams, and Samuel Torres ("Student Plaintiffs") were students at various campuses owned and/or operated by Defendants ECA and Virginia College on the day of campus closures.[1] Plaintiffs Marlene Burch and Rozephyr Jean ("Employee Plaintiffs") were employees at various campuses owned and/or operated by Defendants ECA and Virginia College on the day of the abrupt campus closures. Student Plaintiffs and Employee Plaintiffs filed their Amended Class Action Complaint on February 8, 2019.[2] The proposed class includes students and employees of more than seventy (70) campuses across the United States of America.[3]

At this time, Student Plaintiffs and Employee Plaintiffs' undersigned counsel represent (at least) 184 students and teachers of campuses owned and/or operated by Defendants ECA and Virginia College at the time of campus closures.[4] More specifically, the undersigned counsel represents students and teachers from (at least) twenty-one (21) campuses owned and/or operated by Defendants ECA and Virginia College at the time of campus closures.[5] VC Defendants filed

---

[1] Defendants ECA and/or Virginia College abruptly closed down more than seventy (70) campuses nationwide on December 5, 2018, leaving thousands of students stuck without credits, refunds, or reliable alternatives.
[2] *Document 5*.
[3] At the time of campus closure, there were (at least) nineteen thousand (19,000) students and employees of campuses owned and/or operated by Defendants ECA and Virginia College. *Id*., at paragraph 59.
[4] Indeed, Plaintiffs' undersigned counsel represent more than one hundred and sixty (160) Student Plaintiffs and twenty (20) Employee Plaintiffs.
[5] (1) Augusta, Georgia; (2) Aurora, Colorado; (3) Austin, Texas; (4) Beaumont, Texas; (5) Charlotte, North Carolina; (6) Corpus Christi, Texas; (7) Dallas, Texas; (8) Dayton, Ohio; (9) Greenville, North Carolina;

their Motion to Compel Arbitration on February 15, 2019.[6]  VC Defendants argue the Court should issue a sweeping, blanket order compelling arbitration of all Student Plaintiffs and Employee Plaintiffs based on (1) an arbitration clause within the Tuition Agreement[7] and (2) a separate Arbitration Policy not included within the Tuition Agreement[8].  VC Defendants are wrong.

First, VC Defendants violated the meet-and-confer requirement under Local Rule CV-7(h) and (i).  VC Defendants wholly failed to meet and confer about their sweeping arbitration theory with Plaintiffs' counsel.  Thus, the court should strike VC Defendants' Motion to Compel Arbitration on that basis alone.

Second, VC Defendants' Motion to Compel Arbitration is premature.  The motion is premature because seeking to strike an entire class action based on student-specific arbitration agreements is premature.  The filing of a class action tolls the statute of limitations for those putative class members per *American Pipe* tolling, and a blanket "striking" of those allegations unfairly and prematurely prejudices those putative class members.  If VC Defendants seek compelling arbitration classwide or otherwise effecting a nationwide class, this Court must certify the class to do so.  This Court should deny the premature motion until a decision is made on class certification.

Third, and perhaps more of an indication that VC Defendants' motion puts the cart before the horse, is whether there is even a valid agreement between Student Plaintiffs and VC Defendants.  In fact, as Plaintiffs will show, there is no valid agreement between Student Plaintiffs and VC Defendants because VC Defendants failed to prove the validity of the separate Arbitration

---

(10) Houston, Texas; (11) Indianapolis, Indiana; (12) Modesto-Salida, California; (13) Nashville, Tennessee; (14) Palm Springs, California; (15) Philadelphia, Pennsylvania; (16) Sacramento, California; (17) San Antonio, Texas; (18) San Diego, California; (19) Shreveport, Louisiana; (20) Van Nuys, California; and (21) Vista, California.
[6] *Document 7.*
[7] *See e.g. Document 7-1*, page 5.
[8] *See e.g. Document 7-1*, page 10.

Policy and the arbitration clause within the Tuition Agreement.  As the record stands, the separate Arbitration Policy is a one (or two-page in some instances) document with a typed name as a 'signature'.  There is no evidence Student Plaintiffs provided permission or consent for anyone to type their name(s) in this blank.  None at all.  Both agreements are procedurally and substantively unconscionable provided (1) the circumstances surrounding the negotiation process; (2) the prohibitive and excessive arbitration costs; (3) the fee-splitting provisions are at odds with the AAA rules; and (4) the prevailing-party provision creates an even more one-sided document.  At the very least, the issue of arbitration is not one that can be decided at this summary dismissal stage, particularly when Student Plaintiffs present the attached, *prima facie* evidence no such agreements even existed.[9]

Fourth, and respectfully, this Honorable Court cannot—and should not—compel any non-signatories to arbitration.  Indeed, assuming these agreements are even valid (and Plaintiffs dispute that allegation), the Court should not issue such a sweeping order because the express language of the Tuition Agreement states the terms of the Contract are intended solely for the benefit of each party.  Even if the Tuition Agreement is valid—and it's not—its own terms forbid expanding its reach beyond the signatory parties.

## B.  ARGUMENT

VC Defendants haphazardly place the arbitration cart before the contract horse.  Before even considering VC Defendants' request for sweeping, arbitration relief imposed upon thousands spread across the nation, the Court must determine whether parties actually agreed to arbitrate the

---

[9] Plaintiffs understand Defendants presented this as a "motion to dismiss."  Should this Honorable Court seek to transform this dismissal motion into a summary-judgment motion, Plaintiffs respectfully request this Honorable Court allow discovery before ruling on any summary judgment issue(s).  The specific evidence needed includes, *inter alia*, the deposition of Mr. Ochoa and perhaps others involved with the agreement "signing" process, as well as documents related to those protocols and procedures.

dispute at issue.[10]  This initial determination requires an evaluation of two issues: (1) whether there

is a "valid agreement to arbitrate between the parties," and (2) "whether the dispute in question

falls within the scope of that arbitration agreement."[11]  The validity of a contractual agreement to

arbitrate is determined by the relevant state's law governing the formation of contracts generally.[12]

It is axiomatic that a court may compel arbitration when a party proves that the parties

entered into a valid arbitration agreement.  However, the claim at issue must fall within the scope

of the valid agreement and the claim must be arbitrable.  Here, this is just not so.[13]  The Court

should deny VC Defendants' premature motion to compel arbitration for a litany of reasons, any

single one sufficient to prevent forced arbitration.

### 1. VC Defendants violated this Court's local rules by failing to confer with Plaintiffs regarding the motion.

On February 15, 2019, VC Defendants filed Defendants' Motion to Compel Arbitration.[14]

Despite other email communications, VC Defendants' counsel never mentioned their motion to

compel arbitration to Plaintiffs' counsel, let alone bothered to confer about it.  Indeed, Plaintiffs'

counsel first learned of the compel via ECF filing system on the file-date.  It's simple—VC

Defendants violated this Court's local rules CV-7(h) and (i).[15]

Specifically, VC Defendants violated the meet and confer requirement under Local Rule

CV-7(h) because there was no personal conference (by telephone, email, or in person) between the

attorney for the movant and the attorney for the non-movant.[16]  Moreover, VC Defendants violated

---

[10] *Carey V. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012).

[11] *Id.*; *Klein v. Nabors Drilling USA L.P.*, 710 F. 3d 234, 236 (5th Cir. 2013).

[12] *First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 & n.2 (5th Cir.2003).

[13] *See Howsan v. Dean Witter Reynolds, Inc.*, U.S. 79, 83 (2002); *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009).

[14] *Document 7*.

[15] *See Exhibit 1*, Eastern District of Texas Local Rules and Appendices.

[16] Local Rule CV-7(h) states, "The "meet and confer" motions practice requirement imposed by this rule has two components, a substantive and a procedural component.  For opposed motions, <u>the substantive component requires, at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney</u>

the certificate of conference requirements under Local Rule CV-7(i) because VC Defendants' motion was not accompanied with a certificate of conference at the end of the motion following the certificate of service.[17] The parties could have, with reasonable notice and opportunity, discussed the Motion and the issues presented in it and at least narrowed some issues. Instead, Plaintiffs were blindsided by VC Defendants' motion and, as a result, have incurred considerable time and expense in responding to the motion, in contravention to Local rule CV-7(h) and (i). For these reasons, the Court should strike VC Defendants' Motion to Compel Arbitration for failing to comply with the Rules. If the Local Rules are to mean anything, they should, respectfully, be enforced. Alternatively, as argued below, Plaintiffs ask the Court to deny VC Defendants' Motion to Compel Arbitration.

### 2. VC Defendants' sweeping motion is premature because it seeks to compel arbitration before determining whether the agreement even exists.

The question of class arbitration is substantive in nature and requires judicial determination.[18] VC Defendants overreach when they seek to not only compel arbitration, but strike all class-action allegations against **<u>all Defendants</u>**, to boot. First, deciding "[w]hether or not a party to a contract was bound to arbitrate, as well as what issues it must arbitrate is a matter to

---

for the non-movant… In the personal conference, the participants must give each other the opportunity to express his or her views concerning the disputes. The participants must also compare views and have a discussion in an attempt to resolve their differing views before coming to court. Such discussion requires a sincere effort in which the participants present the merits of their respective positions and meaningfully assess the relative strengths of each position." (emphasis added). *Id*.

[17] Local Rule CV-7(i) states, "Except as specified below, <u>all motions must be accompanied by a "certificate of conference" at the end of the motion following the certificate of service</u>. The certificate must state: (1) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h); and (2) whether the motion is opposed or unopposed." (emphasis added). *Id*. VC Defendants' motion to compel arbitration does not fall under one of Local Rule CV-7(i)'s exceptions.

[18] *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 971 (8th Cir. 2017) (citing *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 875 (4th Cir.), *cert. denied sub nom. Carlson v. Del Webb Cmtys. Inc.*, 137 S. Ct. 567, 196 L. Ed. 2d 444 (2016) and *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013)).

be determined by the Court on the basis of the contract entered into by the parties."[19]  Here, the

relevant provision states:

> 10.   **MANDATORY ARBITRATION** : Any claim, controversy or dispute
> arising out of or relating to this Contract or any alleged breach, violation or
> default of this Contract, together with all other claims, controversies or disputes
> of any nature whatsoever, including but not limited to all claims based in tort,
> fraud, contract, equity, state law, and/or federal law, arising out of or in relation to
> the Student's enrollment and participation in courses at the college, shall be
> resolved and settled by binding arbitration administered by the American
> Arbitration Association in accordance with the applicable American Arbitration
> Association rules (unless the parties mutually agree to the use of different rules) in
> place at the time the arbitration is filed. Such arbitration shall take place within
> thirty miles of the campus where the student enrolled. For students enrolled in
> online classes only, the arbitration shall take place at a location convenient to the
> student, unless the student is located outside the United States, in which case the
> arbitration shall take place in the nearest city to the student's residence where the
> college maintains a campus. This is a mandatory Arbitration Provision.
> Notwithstanding the foregoing, you may bring an individual (not class) action in
> small claims court for claims within the scope of its jurisdiction. Generally, "small
> claims court" is a specialized court that provides expeditious, informal, and
> inexpensive adjudication of small claims with no jury trial. Such courts generally
> have a low maximum monetary limitation to the amount of judgments it can
> award and, by suing in small claims court, a party's right to recover more than the
> court's jurisdictional limit is waived. Any dispute as to whether a claim has been
> filed in a "small claims court" shall be decided by the American Arbitration
> Association in accordance with its rules and procedures and this Arbitration
> Provision. The parties agree that any dispute between the parties shall not be
> adjudicated as a class action or a consolidated class arbitration proceeding either
> in court or under the rules of the American Arbitration Association. The right of
> any party to pursue a class action for any dispute subject to arbitration shall be
> waived to the fullest extent permitted by law. The arbitrator's decision and award
> shall be final, binding on the parties, and non-appealable except as permitted by
> law, and may be entered in any court of competent jurisdiction to enforce it. The
> parties shall pay, respectively, any expenses incurred as American Arbitration
> Association fees, administrative fees, arbitrator fees, mediation fees, hearing fees,
> and postponement/cancellation fees in accordance with the rules and procedures
> adopted by the American Arbitration Association. In the event any provision of
> this binding Arbitration Provision is held to be invalid, illegal or unenforceable

---

[19] *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964).  That alone
requires an analysis VC Defendants failed to do.  Of the named Plaintiffs, five are from Texas, two are from
California, one is from Colorado, and one is from Pennsylvania.  Nowhere do Defendants sufficiently analyze the
appropriate law or facts as it relates to each of the named plaintiffs under those laws.  While those laws could align
such that VC Defendants' lump-sum treatment (and class treatment) is appropriate, VC Defendants did not even
bother to do it.

for any reason and in any respect, such invalidity, illegality, or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Arbitration Provision, which shall be and remain in full force and effect, enforceable in accordance with its terms. For additional information regarding the American Arbitration Association and the arbitration process, please visit www.adr.org. **BY SIGNING THIS CONTRACT, THE STUDENT (AND, IF APPLICABLE, HIS/HER PARENT OR LEGAL GUARDIAN) GIVE UP THE RIGHT TO GO TO COURT AND THE RIGHT TO TRIAL BY JURY AND EXPRESSLY ACKNOWLEDGE AND UNDERSTAND THAT HIS, HER OR THEIR RIGHTS AND REMEDIES WILL BE DETERMINED BY AN ARBITRATOR AND NOT BY A JUDGE OR JURY. THE PARTIES UNDERSTAND THAT A DETERMINATION BY AN ARBITRATOR IS AS ENFORCEABLE AS ANY ORDER AND IS SUBJECT TO VERY LIMITED REVIEW BY A COURT.**[20]

Buried somewhere in the middle, this provision states, "The parties agree that any dispute between the parties shall not be adjudicated as a class action or a consolidated class arbitration proceeding either in court or under the rules of arbitration proceeding either in court or under the rules of the American Arbitration Association."[21]

The Court should deny VC Defendants' motion to compel arbitration against Plaintiffs as premature because determining which individuals actually entered into a binding contract (which a conscionable arbitration clause) is a necessary prerequisite to determining which of those individuals may be required to arbitrate some of their claims.[22]  Indeed, the sensible course of action for both sides is to analyze the "agreements" then determine whether class-action treatment

---

[20] *See generally Document 7-1.*

[21] *Id.* The class action and consolidated waiver is not bolded, highlighted, underlined, or capitalized.

[22] *See Larsen v. Citibank FSB (In re Checking Account Overdraft Litig.)*, 780 F.3d 1031, 1036 (11th Cir. 2015) (holding district court lacked jurisdiction to dismiss because a class including unnamed putative class members had not been certified); *McLeod v. Ford Motor Co.*, No. EDCV 04-1255-VAP(SGLx), 2005 U.S. Dist. LEXIS 17188, at *9 (C.D. Cal. Apr. 14, 2005) (holding defendants' argument for stay on the basis of putative class members' arbitration agreements is premature because no class has been certified, nor is a motion for class certification pending before the Court).

is appropriate.[23]  With more than nineteen thousand (19,000) abandoned and stranded students and teachers, such an approach is far more efficient.[24]

If the Court compels arbitration before certifying the class, the undersigned attorneys for Student Plaintiffs may file over one hundred and fifty (at least) separate lawsuits across the country.[25]  To rule on this motion before class certification will create an inordinate amount of chaos and confusion.  Therefore, Plaintiffs ask this Court to deny VC Defendants' motion to compel arbitration as premature until the Court analyzes the proposed representatives' contracts, their conscionability, and rules on the class certification.

**3.  The Court should deny VC Defendants' motion to compel arbitration because there is no valid arbitration agreement between Plaintiffs and VC Defendants.**

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[26]  One practical effect of Section 2 of the FAA is to preclude states from singling out arbitration provisions and placing them on a different footing than other contracts.[27]  Thus, an arbitration agreement is valid under the FAA if it meets the requirements of the general contract law of the applicable state.[28]  Contrary to VC Defendants' aggressively self-interested position, the federal policy favoring arbitration does not apply to the determination of whether a valid agreement to arbitrate; rather, courts must refer to "ordinary state-law principles that govern the formation of contracts."[29]  Stated differently, the all-too-common refrain that "courts favor arbitration" has no business infecting this Court's analysis whether a

---

[23] *See Garcia v. JCPenney Corp.*, No. 12-cv-3687, 2016 U.S. Dist. LEXIS 29969, at *20-21 (N.D. Ill. Mar. 8, 2016).
[24] Notably, the student contracts are virtually identical across the nation—so, too, are the teacher contracts.  Hence, classwide treatment is appropriate with such commonality and typicality, once such an analysis is undertaken.
[25] *See supra note 4.*
[26] 9 U.S.C. § 2.
[27] *See Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).
[28] *First Options*, 514 U.S. at 944; *In re Advance PCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005).
[29] *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008).

contract even existed—that's based on state law, not federal predilection for arbitration.  The arbitration cart cannot come before the state-law contract horse.

Additionally, the party seeking to compel arbitration bears the burden to establish the existence of a valid agreement to arbitrate.[30]  Here, VC Defendants failed to prove the validity of any arbitration agreement for Student Plaintiffs.  VC Defendants lose before they begin.

### (a) *VC Defendants failed to prove the validity of the Student Plaintiffs' separate Arbitration Policy.*

VC Defendants produced a separate "Arbitration Policy" for each named Student Plaintiff.[31]  Each Arbitration Policy includes "BY **SIGNING** **THIS** CONTRACT, THE STUDENT…"[32]  Thus, the separate Arbitration Policy itself requires signature.  Each separate Arbitration Policy contains a signature block similar to this:

VC Defendants argue the above "signature" and "date" alone suffice a valid separate agreement.[34]  They don't.

Under Texas law, "[a]n electronic record or electronic signature is attributable to a person if it was **the act of the person**."[35]  Whether the signature was the act of the person "may be shown in any manner, including a **showing of the efficacy of any security procedure** applied to

---

[30] *Jolley v. Welch*, 904 F.2d 988, 990 (5th Cir. 1990).
[31] *See e.g. Document 7-1*, at pages 10-11.
[32] *Id*. (emphasis added).
[33] *Id*., at page 42.
[34] *Document 7*, at page 6.
[35] TEXAS BUSINESS AND COMMERCE CODE Section 322.009(a) (emphasis added).

determine the person to which the electronic record or electronic signature was attributable."[36]
Here, VC Defendants failed to provide any evidence that (1) each Student Plaintiff performed **any act** to agree to the Arbitration Policy, or (2) any security procedure was applied to determine the electronic "signature" was performed by the student.  Indeed, Student Plaintiffs never checked a box and/or signed the separate arbitration policy before "agreeing" to enroll as students at one of VC Defendants' affiliate schools.[37]  That is, Student Plaintiffs never committed any "act" to agree to the separate Arbitration Policy.

Despite this glaring omission, VC Defendants argue there is nonetheless an enforceable arbitration agreement, relying heavily on this court's ruling in *Thick v. Dolgencorp of Texas, Inc.*, No. 4:16-CV-00733, 2017 WL 108297 (E.D. Tex. Jan. 11, 2017).[38]  In *Thick*, the employer argued the employee agreed to a separate arbitration agreement.[39]  Importantly, the *Thick* Plaintiff had to sign into the hiring system and **affirmatively click** on "I agree to the terms" box, then initial another box just below it:

| NAME: Michelle Thick | SSN: | XXX-XX-7338 |
|---|---|---|
| ☑ | I agree to the terms of the Agreement. I understand and acknowledge that by checking this box, both Dollar General and I will be bound by the terms of this Agreement. | |
| ☐ | I would like to take up to 30 days after the start of my employment with Dollar General to review and consider this Agreement. I understand that if I do not expressly opt out within 30 days of the start of my employment using the process described above, I will be bound by the terms of this Agreement and that Dollar General will also be bound by the terms of this Agreement. | |

**By initialing the box below I certify that the above information is true and correct, and I agree to the conditions of hiring.**

Your Initials:  MT _____                    Date:  11/13/2014 _____

8/4/14                                                                                                          40

---

[36] *Id*. (emphasis added).
[37] *Exhibits 2-5*, Student Plaintiffs' Sworn Affidavits.  Student Plaintiffs were not told about the separate Arbitration Policy during their enrollment meetings with their respective admissions associate. *Id*.  In fact, Student Plaintiffs were not provided with an opportunity to view the separate Arbitration Policy during their enrollment meetings. *Id*. Student Plaintiffs cannot "act" on something that is not told to them, let alone consent to it.
[38] *Document 7*, at page 6.
[39] *Exhibit 6*, Thick Arbitration Agreement at paras 4 and 5. *Id*., at page 7.
[40] *Id*.

The 'checked box' was on the <u>actual Arbitration Agreement</u>.[41]   The *Thick* employer argued successfully the *Thick* employee agreed to arbitrate because the employee (1) signed into the hiring system[42]; (2) **selected the option stating she agreed to the terms of the Agreement**[43]; and (3) was provided an opportunity to opt out.[44]   In fact, VC Defendants stated in their motion the *Thick* arbitration agreement was electronically consented to **by clicking the 'I agree to' box**.[45]   Indeed, Plaintiffs agree with VC Defendants.   The distinction: in *Thick*, Texas Business and Commerce Code Section 322.009(a) was met—the employee 1) signed into a secured system, 2) personally acted to select an option herself on the Arbitration Agreement itself agreeing to the terms by clicking "I agree," 3) was given an opportunity to act to opt out, and 4) even initialed below the self-clicked box.

Here, none of these *Thick* elements are met.   Indeed, as the record now stands, VC Defendants adduced no evidence that the Student Plaintiffs performed any act to agree to the separate Arbitration Policy.   To the contrary, there is evidence the Student Plaintiffs did not click any "I agree to" box on any page that mentions arbitration or entered any initial or signature on any page that mentions arbitration.[46]   VC Defendants have only provided a seven-page Tuition Agreement and a digital Arbitration Policy with each Student Plaintiffs' name typed above the signature line and a date typed above the date sign.[47]   That's it.   VC Defendants failed to prove the separate Arbitration Policy is valid—particularly under the stringent standards of a motion to dismiss.

---

[41] *Id.*

[42] The security procedure applied to determine the electronic "signature" was performed by the employee as required by TEXAS BUSINESS AND COMMERCE CODE Section 322.009(a).

[43] The act performed by the employee as required by Texas Business and Commerce Code Section 322.009(a).

[44] *See Thick v. Dolgencorp of Texas, Inc.*, No. 4:16-CV-00733, 2017 WL 108297 (E.D. Tex. Jan. 11, 2017). (emphasis added).

[45] *Document 7*, at page 6.

[46] *See Exhibits 2-5*, Student Plaintiffs' Sworn Affidavits; *see also Document 7-1.*

[47] *See Document 7-1.*

**(i) Student Plaintiffs Karlene Carpenter and Anita Trevino should not be compelled to arbitration because VC Defendants rely solely on the invalid separate Arbitration Policy.**

VC Defendants rely solely on the separate Arbitration Policy to compel Student Plaintiffs Karlene Carpenter and Anita Trevino. Indeed, VC Defendants state in their motion that Student Plaintiffs Karlene Carpenter and Anita Trevino "executed **only** a standalone Arbitration Policy, which contained identical language cited herein to that in the Tuition Agreements and Arbitration Policies of the other Student Plaintiffs."[48]  For the reasons set forth above, the separate Arbitration Policy is invalid. But more important, neither Karlene Carpenter nor Anita Trevino typed their names into these "agreements."  It's simple—they have no agreement to arbitrate.

Additionally, Student Plaintiffs Karlene Carpenter and Anita Trevino were not provided an opportunity to review the separate Arbitration Policy before "agreeing" to enroll.[49]  Indeed, the admission officials did not provide Student Plaintiffs Karlene Carpenter and Anita Trevino with an opportunity to view the separate Arbitration Policy.[50]  Thus, even assuming this Court rejects their sworn testimony they did not type their names into these agreements, Student Plaintiffs Karlene Carpenter and Anita Trevino were unable to know that a separate Arbitration Policy existed at the time of "agreeing" to enroll in their respective colleges.[51]

**(ii) Employee Plaintiffs Marlene Burch and Rozephyr Jean should not be compelled to arbitration because VC Defendants did not provide evidence they gave permission to insert their electronic signature.**

---

[48] *Document 7*, at footnote 2. (emphasis added).
[49] *See Exhibits 3* and *4*, Sworn Affidavits of Anita Trevino and Karlene Carpenter.
[50] *Id*.
[51] *Id*. If a person (1) did not know about an arbitration policy; (2) was never informed of an arbitration policy; and (3) was never provided an opportunity to review the arbitration policy, how can he or she be bound to its terms? Moreover, how can he or she bargain for or against it?  This is why TEXAS BUSINESS AND COMMERCE CODE Section 322.009(a) and this Court's *Thick* analysis require a personal, intentional, knowledgeable **act** by the signatory.  It is this type of personal, intentional, and knowledgeable act that is wholly missing here, or at least not conclusively shown for the more stringent motion to dismiss standard.

Employee Plaintiffs incorporate section (a) above.  VC Defendants produced identical Arbitration Agreements for Employee Plaintiffs Marlene Burch and Rozephyr Jean.[52]  Employee Plaintiff Jean's agreement contains two typed 'signatures' and two typed initials.[53]  Those are not Employee Plaintiff Jean's handwriting.[54]  Once again, VC Defendants failed to provide a shred of evidence proving they (or whoever entered the information) had permission to enter Employee Plaintiff Jean's initials and/or signature.  Moreover, there is no proof these digital initials and/or signature(s) satisfy the Texas Business and Commerce Code Section 322.009 requirements.[55]

VC Defendants provided an unsigned[56] and undated Arbitration Agreement to 'prove' Employee Plaintiff Marlene Burch agreed to arbitration and waive her right to a jury trial.[57]  That, of course, provided **_zero_** evidence towards the contents of what she agreed to.  However, VC Defendants provide a highly redacted separate document that states Employee Plaintiff Marlene Burch 'signed' an agreement.[58]  That, alone, does not provide any evidence that Mrs.  Burch agreed to the specific terms of the unsigned/undated agreement attached.[59]

### (b) *The arbitration clause within the Tuition Agreement and the separate Arbitration Policy are procedurally and substantively unconscionable.*

An unconscionable contract is unenforceable.[60]  Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the

---

[52] *See Document 7-2.*  Employee Plaintiff Rozephyr Jean's 'agreement' is from 2015 and Employee Plaintiff Marlene Burch is from August 2018.  The two worked on separate campuses.
[53] *Id.*
[54] *Exhibit 7*, Sworn Affidavit of Rozephyr Jean.
[55] *See supra* notes 35 and 36.
[56] Indeed, there is no signature, albeit digital or handwritten.
[57] *See Document 7-2*, at pages 3-5.
[58] *Id.*  Again, there's no proof that the blank (unsigned/undated) arbitration agreement is the document Employee Plaintiff Burch agreed to, if any.
[59] *Id.*
[60] *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010).

fairness of the arbitration provision itself."[61]   The totality of the circumstances must be assessed as of the time the contract was formed.[62]   In determining whether a contract is unconscionable, Texas courts examine "(1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable."[63]

> **(i)   The arbitration provision within the Tuition Agreement and the separate Arbitration Policy are procedurally unconscionable because the contract formation process tainted the negotiation process.**

Procedural unconscionability challenges the fairness of the contract formation process.[64] Moreover, procedural unconscionability relates to the making or inducement of the contract, **focusing on the facts surrounding the bargaining process**.[65]   Some form of oppression and unfairness must taint the negotiation process leading to the agreement's formation.[66]   Here, the circumstances for which Student Plaintiffs allegedly entered into the separate Arbitration Policy and Tuition Agreement were oppressive and unfair.

For example, on November 16, 2017, Student Plaintiff Chloe Brooks met with Juan Ochoa (a Brightwood College Admissions Associate) in his office located at the Brightwood campus in Corpus Christi, Texas.[67]   During the meeting, Mr. Ochoa sat at his desk and Mrs. Brooks sat in a

---

[61] *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)).

[62] *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex.App.Waco 2005, pet. denied); *El Paso Natural Gas Company v. Minco Oil & Gas Company*, 964 S.W.2d 54, 60-61 (Tex.App.--Amarillo 1997), *rev'd on other grounds*, 8 S.W.3d 309 (2000).

[63] *Delfingen v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App. 2013) (citing *Ski River*, 167 S.W.3d at 136).

[64] *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988).

[65] *See TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex.App.--Houston [14th Dist.] 2007, pet. denied)

[66] *El Paso Nat. Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex. App.— Amarillo 1998), *rev'd on other grounds*, 8 S.W.3d 309 (Tex. 1999); *see also In re Palm Harbor Homes Inc.*, 195 S.W.3d at 679.

[67] *See Document 7-1*, at page 29; *see also Exhibit 2*, Sworn Affidavit of Chloe Brooks.

chair across his desk.[68]  Mr. Ochoa had a computer on his desk in front of him.[69]  Mr. Ochoa turned

the computer screen for Mrs. Brooks' view no more than three times during the November 16,

2017 meeting.[70]  Specifically, Mr. Ochoa turned the computer screen for Mrs. Brooks so that she

could review page one of the Tuition Agreement.[71]  Next, Mr. Ochoa turned the computer screen

back towards himself.  Mr. Ochoa then orally explained the tuition amount, financial aid,

scheduling, and living expenses with computer screen facing himself.  Mr. Ochoa did not turn the

computer screen around for Mrs. Brooks to review pages 2 and 3 of the Tuition Agreement.[72]

Indeed, Mr. Ochoa wholly failed to mention (1) the arbitration clause on pages 2 and 3 of the

Tuition Agreement, or (2) the separate Arbitration Policy during the November 16, 2017

meeting.[73]  Mrs. Brooks was not provided a hard copy of the Tuition Agreement or the separate

Arbitration Policy at any point during the November 16, 2017 meeting.[74]

The November 16, 2017 meeting lasted no longer than forty-five minutes.[75]  According to

Mrs. Brooks' student portal, Mrs. Brooks—who never clicked "I agree" on any document or page

stating there was agreement to arbitrate— "entered into" the following agreements during that

meeting:

    1)  Privacy Statement (at 1:58 pm.);

    2)  Emergency Contract Information (at 2:02 p.m.);

    3)  Information Release Form (at 2:12 p.m.);

    4)  Student Application (at 2:13 p.m.);

---

[68] *See Exhibit 2*, Sworn Affidavit of Chloe Brooks.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*

5)  Campus Security COR (at 2:14 p.m.);

6)  BC Corpus Christi Arbitration Policy (at 2:14 p.m.);

7)  BC Background Acknowledgment (at 2:15 p.m.);

8)  BC Computer Policy (at 2:15 p.m.);

9)  BC HS/GED Certification (at 2:16 p.m.);

10) BC Transfer of Credits In Policy (at 2:16 p.m.);

11) BC Transfer of Credits Out Policy (at 2:16 p.m.);

12) Accreditation Disclosure Brightwood Closure (at 2:17 p.m.); and

13) BC Corpus Christi Tuition Agreement (at 2:25 p.m.).[76]

The above-referenced documents—many indicating less than one minute to read complex agreements—provide evidence that Mr. Ochoa did not provide Student Plaintiff Chloe Brooks sufficient time to read the above-referenced documents.[77]  Indeed, Mrs. Brooks did not even see any of the above-referenced documents other than two pages of the BC Corpus Christi Tuition Agreement—because Mr. Ochoa was at *his* computer with the screen turned toward *him*.[78] However, each document somehow contains Mrs. Brooks' typed name above the signature block.[79] This "process" did not just occur with Mrs. Brooks – it occurred with all named Student Plaintiffs.[80]

During the November 16, 2017 meeting with Juan Ochoa, Mrs. Brooks (1) only manually entered any information while page 7 of the Enrollment Agreement was displayed on Mr. Ochoa's

---

[76] *See Exhibit 8*, Chloe Brooks' Student Portal.
[77] Thirteen complex, legal documents in twenty-seven minutes is not sufficient.
[78] *See Exhibit 2*, Sworn Affidavit of Chloe Brooks.
[79] *See Exhibit 9*, Chloe Brooks' Ancillary Documents.
[80] *See Exhibits 2-5*, Student Plaintiffs' Sworn Affidavits. Indeed, Student Plaintiff Karlene Carpenter's portal includes ten documents "agreed to" within <u>four</u> minutes; *see also Exhibit 10*, Karlene Carpenter's Student Portal.

computer screen[81], and (2) never entered her initials into any document – manually or electronically.  Moreover, VC Defendants provided no evidence that Mr. Ochoa had permission to enter Mrs. Brooks' initials and/or name on any document.  Again, this "process" did not just occur with Mrs. Brooks – it occurred with all named Student Plaintiffs.[82]  There is never that *Thick* moment where the student was offered to personally, intentionally, and physically click "I agree" to an arbitration agreement, let alone initial it after given an option to opt out.  Here, there's zero evidence anything like that happened—because it didn't.

In summary, **before 'agreeing' to study at Brightwood College**, Student Plaintiffs (1) were not told about the arbitration clause within the Tuition Agreement during their enrollment meetings; (2) were not provided the opportunity to view the arbitration clause within the Tuition Agreement; (3) were not told about the separate Arbitration Policy; (4) did not see the separate Arbitration Policy; (5) were not provided an opportunity to read the separate Arbitration Policy; (6) were not given the opportunity to click "I agree" to the arbitration policy, (7) were not given an opportunity to opt out of arbitration, and (8) were not required to initial their personal, intentional election of arbitration.[83]

Yet, VC Defendants rely heavily on a "clicked box" to validate Employee Plaintiffs' arbitration agreement:

> "In order to confirm their consent, employees **clicked a box** attesting their digital signature and agreement. (Id. at p. 6 ("By signing, I confirm that I have received, read, and agree to be bound by the attached Arbitration Agreement.")).  This "click" is memorialized in the Workday system and includes the date and time stamp of each employee's click signature. (Id. at p. 6.)."[84]

---

[81] *Exhibit 2*, Sworn Affidavit of Chloe Brooks.  Mr. Ochoa only displayed page seven (7) of the Tuition Agreement to Mrs. Brooks when she electronically entered any information.
[82] *See Exhibits 2-5*, Student Plaintiffs' Sworn Affidavits.
[83] *See Exhibits 2-5*, Student Plaintiffs' Sworn Affidavits.
[84] *Document 7*, at page 6. (emphasis added).  Plaintiffs do not concede this renders Employee Plaintiffs' arbitration agreement conscionable.

However, there is no 'checked box' anywhere on Student Plaintiffs' arbitration agreements.  For these reasons, the Student Plaintiffs' arbitration clause within the Tuition Agreement and the Student Plaintiffs' separate Arbitration Policy are procedurally unconscionable and are unenforceable.  If not, the issues above have (at least) presented a fact issue for the trial court to determine, and summary disposition at the dismissal stage is premature.[85]  VC Defendants cannot put the arbitration cart in front of the contract horse.

> **(ii) The separate Arbitration Policy and arbitration clause included within the Tuition Agreements are substantively unconscionable because the arbitration fees deny the class access to the arbitration forum.**

"Substantive unconscionability refers to whether the arbitration provision ensures preservation of the substantive rights and remedies of a litigant."[86]  An arbitration agreement may make a contract unconscionable if the existence of large arbitration costs could preclude a litigant from effectively vindicating [his or her] rights in the arbitral forum.[87]  Here, the AAA imposes the following arbitration fees for a consumer's individual arbitration claim:

| Chart 1 – AAA Costs for an Individual Arbitration[88] | | |
|---|---|---|
| **Charges** | **Consumer** | **Business** |
| Filing Fee[89] | $200 | $300 |
| Case Management Fee | $0 | $1,400[90] |
| Hearing Fee | $0 | $500[91] |

---

[85] *Besteman v. Pitcock*, 272 S.W.3d 777, 788 (Tex.App.--Texarkana 2008, no pet.).

[86] *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (citing Halliburton, 80 S.W.3d at 572).

[87] *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 504 (5th Cir. 2009); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000) (the arbitration agreement requires Plaintiffs to pay arbitration fees so expensive the they will effectively be denied access to the arbitration forum).

[88] *See Exhibit 11*, AAA's Consumer Arbitration Expenses.

[89] These are non-refundable fees. *Id.*

[90] The case management fees are $1,400 for one arbitrator and $1,775 for three arbitrators.  *Id.*  The arbitration agreements are silent as to the number of arbitrator(s).  The AAA rules provide the business must pay for the case management fees. *Id.*  The case management fee will be assessed 60 days after the date the AAA sends correspondence communicating the "answer" due date to the parties or upon the appointment of the arbitrator, whichever comes first. *Id.*

[91] The AAA rules provide the business must pay for the hearing fee. *Id.*

| | | |
|---|---:|---:|
| Arbitrator Compensation | $0 | $1,500[92] |
| Arbitrator's Travel | $0 | Unknown[93] |
| **TOTAL[94]** | **$200** | **$3,700** |

If the Court compels the seven named Student Plaintiffs to individual arbitration, the following

arbitration expenses (before experts, attorney's fees, and other expenses) apply:

| Chart 2 - AAA Costs for the Seven Named Student Plaintiffs | | |
|---|---:|---:|
| **Charges** | **Consumer** | **Business** |
| Filing Fee | $1,400 | $2,100 |
| Case Management Fee | $0 | $9,800 |
| Hearing Fee | $0 | $3,500 |
| Arbitrator Compensation | $0 | $10,500 |
| Arbitrator's Travel | $0 | Unknown |
| **TOTAL[95]** | **$1,400** | **$25,900** |

If the Court compels the proposed class[96] to individual arbitrations, the following arbitration

expenses apply:

| Chart 3 - AAA Costs for the Proposed Class[97] | | |
|---|---:|---:|
| **Charges** | **Consumer** | **Business** |
| Filing Fee | $3,800,000 | $5,700,000 |
| Case Management Fee | $0 | $26,600,000 |
| Hearing Fee | $0 | $9,500,000 |
| Arbitrator Compensation | $0 | $28,500,000 |
| Arbitrator's Travel | $0 | Unknown |
| **TOTAL[98]** | **$3,800,000** | **$70,300,000** |

---

[92] The AAA rules provide the business must pay the arbitrator's compensation. *Id.* If the arbitrator spends more than seven hours in reviewing the documents and rendering the award, the business must pay the arbitrator an hourly fee of $300/hour. *Id.*

[93] The AAA rules provide the business must pay the arbitrator's travel expenses. *Id.* All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business. *Id.*

[94] These amounts assume one arbitrator, no hourly arbitrator payments, and zero travel expenses. These amounts do not include attorney's fees either.

[95] These amounts assume one arbitrator, no hourly arbitrator payments, and zero travel expenses. These amounts do not include attorney's fees either.

[96] *See generally Document 5.*

[97] At the time of campus closures, there were (at least) nineteen thousand (19,000) enrolled students. *Id.*

[98] These amounts assume one arbitrator, no hourly arbitrator payments, and zero travel expenses. These amounts do not include attorney's fees either.

These costs do not include the expert, attorney, and out-of-pocket expenses for each individual arbitration.  There is no provision in the AAA rules allowing claimants in separate arbitration proceedings to share discovery costs or use common expert reports.  Thus, the expected attorney's fees and expert testimony could easily exceed $1,000,000 for the nine named plaintiffs alone.[99]  The discrepancy between costs and anticipated recovery is excessive given the circumstances here—namely, where many out-of-pocket claims barely reach $10,000.

In *Carter v. Countrywide Credit Indus., Inc.*,[100] the Fifth Circuit agreed that the arbitration agreement imposed prohibitive costs on the plaintiff and, as a remedy, it severed the "Fees and Costs" provision that imposed the costs.  While the circuit court reversed the district court and ordered arbitration, it did so on the basis that "the Carter Appellants' prohibitive costs argument has been mooted by **Countrywide's representation to the district court that it would pay all arbitration costs.**"[101]  Here, if VC Defendants offer to pay **all** arbitration costs for both sides, Student Plaintiffs concede the excessive cost argument (only).[102]

> ### 1. *Employee Plaintiffs' arbitration agreement(s) are substantively unconscionable because the fees deny the class access to the arbitration forum as well.*

Here, the AAA imposes the following arbitration fees for an employee's individual arbitration claim:

| Chart 4 - AAA Costs for an Individual Arbitration[103] | | |
|---|---|---|
| **Charges** | **Consumer** | **Company** |
| Filing Fee[104] | $300 | $1,900 |

---

[99] These costs would fall on the individual claimants.
[100] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004).  Indeed, VC Defendants cite *Carter* in their motion. *See Document 7*, at page 4.
[101] *Carter*, 362 F.3d at 300. (emphasis added).
[102] Student Plaintiffs will pay the initial filing fee as required under AAA rules.
[103] *See Exhibit 12*, AAA's Expenses for Employment Arbitration.
[104] These are non-refundable fees. *Id*.  The non-refundable fee for a three-arbitrator panel is $2,500. *Id*.

| Case Management Fee | $0 | $750[105] |
| Arbitrator Compensation | $0 | Unknown[106] |
| Arbitrator's Travel | $0 | Unknown[107] |
| **TOTAL[108]** | **$300** | **$2,650** |

If the Court compels the two named Employee Plaintiffs to individual arbitration, the following arbitration expenses would apply:

| Chart 5 - AAA Costs for the Two Named Employee Plaintiffs[109] | | |
|---|---|---|
| **Charges** | **Consumer** | **Company** |
| Filing Fee | $600 | $3,800 |
| Case Management Fee | $0 | $1,500 |
| Arbitrator Compensation | $0 | Unknown |
| Arbitrator's Travel | $0 | Unknown |
| **TOTAL[110]** | **$600** | **$5,300** |

If the Court compels the proposed class[111] to individual arbitration, the following expenses apply:

| Chart 6 - AAA Costs for the Proposed Class of Student Employees[112] | | |
|---|---|---|
| **Charges** | **Consumer** | **Company** |
| Filing Fee | $105,000 | $665,000 |
| Case Management Fee | $0 | $262,500 |

---

[105] The case management fees are $1,000 for three arbitrators. *Id*. The AAA rules provide the employer or company must pay for the case management fees. *Id*. The case management fee will be assessed 90 calendar days after the date of receipt of a demand for arbitration. *Id*.

[106] Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. *Id*. The employer or company shall pay the arbitrator's compensation unless the employee or individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. *Id*.

[107] All expenses of the arbitrator, required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer or company, unless otherwise agreed by the parties post-dispute. *Id*.

[108] These amounts assume one arbitrator, no arbitrator compensation, and zero expenses.

[109] Rozephyr Jean and Marlene Burch. *See Document 5.*

[110] These amounts assume two claimants, two arbitrators, no arbitrator compensation, and zero expenses.

[111] *See Document 5.* There was (at least) 350 Employee Plaintiffs at the time of campus closures.

[112] At the time of campus closures, there were (at least) 350 employees at the time of the campus closures.

| | | |
|---|---:|---:|
| Arbitrator Compensation | $0 | Unknown |
| Arbitrator's Travel | $0 | Unknown |
| **TOTAL[113]** | **$150,000** | **$972,500** |

These costs do not include the expert, attorney, and out-of-pocket expenses for each individual arbitration.  The expected attorney's fees and expert testimony for the named Employee Plaintiffs only could easily exceed $200,000.[114]  The discrepancy between costs and anticipated recovery is excessive given the circumstances.   Thus, Employee Plaintiffs' arbitration agreement is substantively unconscionable and invalid.  However, if VC Defendants offer to pay **all** arbitration costs, Employee Plaintiffs concede the excessive cost argument (only).[115]

> (iii) **The separate Arbitration Policy and arbitration clause included within the Tuition Agreement are substantively unconscionable because the fee-splitting provisions pervert the AAA rules.**

While VC Defendants claim to follow AAA *at first*, the switcheroo is, as typical, in the fine print.   The separate Arbitration Policy and the arbitration clause within the Tuition Agreement[116] fail to preserve the Student Plaintiffs' substantive rights and remedies since they state that "the parties shall pay, **respectively**, any expenses incurred as American Arbitration fees, administrative fees, mediation fees, hearing fees, and postponement/cancellation fees in accordance with the rules and procedures adopted by the American Arbitration Association."[117] This provision is contradictory and at odds with the AAA rules, which requires the business to bear the expenses of the arbitration beyond the claimant's initial filing fee when arbitration is

---

[113] These amounts assume 350 claimants, 350 arbitrators, no arbitrator compensation, and zero expenses.
[114] There is no provision in the AAA rules allowing claimants in separate arbitration proceedings to share discovery costs.
[115] Employee Plaintiffs will pay the initial filing fee as required under AAA rules.
[116] Student Plaintiffs' Karlene Carpenter and Anita Trevino do not have these arbitration clauses in their Tuition Agreement. *See Document 7-1*, pages 32-41 and 43-50.
[117] *See e.g. Document 7-1*, at page 5. (emphasis added).

pursuant to a consumer-promulgated arbitration policy.[118]   So, looking back at the Charts 1, 2, or

3, the amount for an individual arbitration alone is $3,900 *before* considering attorney's fees or

other "expenses."   So, Defendants, knowing the bulk of their target students are struggling or

taking out loans to even enroll in a few classes, crafted a fine-print alteration of AAA rules to make

arbitration more expensive than many of the individual claims.   This was no accident—it was an

intentional perversion of AAA rules to make arbitration too onerous.   Self-annointed immunity

through contract unconscionability is, itself, unconsionable.

These provisions render the arbitration agreement(s) substantively unconscionable.[119]   The

court should examine the conscionability of a fee-splitting provision on a case-by-case basis.[120]

Given the circumstances, the fee-splitting provisions are unconscionable.   Again, if VC Defendants

offer to pay **all** arbitration costs for both sides, Student Plaintiffs concede the fee-splitting

provision argument (only).[121]

### (iv) The separate Arbitration Policy and arbitration clause included within the Tuition Agreement are substantively unconscionable because the agreements are one-sided.

A contract is unconscionable if "given the parties' general commercial background and the

commercial needs of the particular trade or case, the clause involved is so **one-sided** that it is

unconscionable under the circumstances existing when the parties made the contract."[122]   Here,

Student Plaintiffs' Tuition Agreement states, "[i]n any legal action permitted by this Contract or

arbitration between the parties arising out of this Contract and the subject matter contained herein,

**the College, if it prevails**, shall be entitled to recover its reasonable attorneys' fees in addition to

---

[118] *See Exhibit 11*, AAA's Consumer Arbitration Expenses.
[119] *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785-86 (9th Cir.2002) (fee-allocation scheme requiring employee to split arbitrator's fees with employer renders arbitration agreement substantively unconscionable).
[120] *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir.2004) (fee-shifting provisions reviewed case-by-case).
[121] Student Plaintiffs will pay the initial filing fee as required under AAA rules.
[122] *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). (emphasis added).

any other relief to which it may be entitled or awarded."[123]   According to this clause, each Student Plaintiff would be (assuming the College prevails) 'on the hook' for the entire costs in Charts 1, 2, or 3, their own attorney's fees, the College's attorney's fees (which undoubtedly is in the tens of thousands of dollars), the arbitrator's travel expenses, and any additional arbitration costs.[124] Thus, the fee-shifting provision clause is one-sided because it requires the Student Plaintiff to pay the College exorbitant sums if the College prevails, but does not require the College to pay the Student Plaintiff if the Student Plaintiff prevails.[125]   And again, VC Defendants crafted this perversion of AAA rules *knowing* that the bulk of students were either on financial aid, or otherwise in a financial position that precluded an ability to pay for arbitration.

Moreover, the 'prevailing-party clause' is confusing – what does 'prevail' mean? Or, what if the College 'prevails' on one of the Student Plaintiffs' many arbitration claims, but does not prevail on the others?   Will the Student Plaintiff be required to pay for all of the College's reasonable attorneys' fees?   Or, will the attorney's expenses be limited to the work performed on the 'prevailed' claim(s)?   These uncertainties create a vastly one-sided provision that should be read against the scrivener, VC Defendants.   A party to a contract has a right to know the answers to these questions – however, Student Plaintiffs were unable to review or negotiate the provision, which itself is too vague to understand.[126]   Thus, the arbitration agreements are unenforceable.

---

[123] *Document 7-1*, at page 8. (emphasis added).

[124] *See supra* Charts 1, 2, and 3.  Indeed, this number could easily exceed $25,000 per individual arbitration.

[125] Indeed, an Eastern District of Texas court found a similar provision unconscionable. *See generally Lott v. Buccaneers Satellite Inc.*, No. 9:11CV173, 2012 U.S. Dist. LEXIS 198328, at *9 (E.D. Tex. Aug. 10, 2012) (holding a provision requiring the non-prevailing party to pay for the prevailing party's arbitration costs is unconscionable).

[126] Again, Student Plaintiffs did not see the clause. *See Exhibits 2-5*, Student Plaintiffs' Sworn Affidavits.  Frankly, the only one who "agreed" to all of this was Mr. Ochoa or similar VC Defendant employees, who did see these provisions.

Alternatively, if the Court finds the arbitration clause within the Tuition Agreement to be enforceable, Student Plaintiffs ask the Court to sever the provisions on attorney's fees and costs.[127] Indeed, Texas courts are authorized to sever an illegal or an unenforceable provision from a contract and enforce the remainder of the contract.[128]  Here, the provisions on attorney's fees and costs are unenforceable and should be severed from the Tuition Agreement(s).

### (c) *Assuming, arguendo, the Court compels Student Plaintiffs to arbitration, Student Plaintiffs request the Court to consolidate the arbitrations into one arbitration.*

The availability of class or collective arbitration involves a foundational question of arbitrability: whether the potential parties to the arbitration agreed to arbitrate.[129]  "Determining whether the agreement reflects the parties' consent to class or collective arbitration requires the decisionmaker to determine whether the parties agreed to arbitrate those disputes as well. And that is a gateway matter for the court to decide."[130]

For the reasons set forth in this response, the Court should determine that the Student Plaintiffs did not agree to any arbitration agreement, and certainly did not waive their right to consolidated arbitration.[131]  This is particularly true here, at the summary dismissal stage, where Defendants fail to adduce sufficient evidence to comply with Texas law and this Court's *Thick* precedent.  But if the Court grants VC Defendants' motion to compel arbitration and enforces the consolidated-arbitration waiver, then Student Plaintiffs and absent class members subject to the

---

[127] *See Spinetti v. Service Corp.*, 324 F.3d 212, 214 (3d Cir.2003) (court severed provisions on attorney fees and arbitration costs); *Morrison v. Circuit City Stores*, 177 F.3d 634, 677 (7th Cir.1999) (court severed cost-splitting provision).

[128] *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 565 (Tex. 2006); *Williams v. Williams,* 569 S.W.2d 867, 871 (Tex. 1978); *Carter*, 362 F.3d 294 at 300 (the Fifth Circuit severed the fees and costs' provision within the arbitration agreement because it imposed prohibitive costs on the plaintiff).

[129] *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507-08 (7th Cir. 2018) (citing *John Wiley & Sons*, 376 U.S. at 546-47 and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403).

[130] *Herrington*, 907 F.3d at 508-09 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) (explaining that a court may order arbitration of a dispute "only where the court is satisfied that the parties agreed to arbitrate *that dispute*.").

[131] The consolidated-arbitration provision is not bolded, highlighted, or in capital letters. *Document 7-1*, at page 5.

arbitration provision must pursue their claims against VC Defendants through individual arbitration proceedings.  As stated in this response, the costs of the individual arbitrations will cost (at least) $25,000 per individual.[132]  Thus, enforcement of the arbitration clause here would prevent Student Plaintiffs from effectively vindicating their rights, and VC Defendants' one-sided perversion of AAA rules exact their intended toll—virtual immunity for the VC Defendants.

If the Court finds the arbitration agreement(s) valid and enforceable, Student Plaintiffs ask the Court to sever the consolidated-arbitration waiver, and compel all Student Plaintiffs to one consolidated arbitration proceeding.

For the reasons outlined above, Employee Plaintiffs request the Court the same.

**4. Alternatively, Student Plaintiffs ask the Court to compel Student Plaintiffs' claims against Defendants Education Corporation of America, Virginia College, LLC and their affiliates to arbitration, but maintain Student Plaintiffs' class action claims against Defendants Willis Stein & Partners, LLC, Monroe Capital, LLC, Stuart C. Reed, Avy Howard Stein, Theodore Koenig, Jackie Baumann, and Erin Shea.**

First, Student Plaintiffs and Employees respectfully submit these agreements are unenforceable and the Court's inquiry should end there.  However, if the Court rejects the attached evidence and finds otherwise, they respectfully submit another issue with VC Defendants' blanket request for summary dismissal of this entire case—namely, non-signatory strangers to a contract cannot seek benefits from it, particularly when the contract purports to reject third-party beneficiaries.  The court cannot require a party to arbitrate a dispute unless the party has entered into a valid contractual agreement to do so.[133]  Indeed, the Fifth Circuit has "consistently held that where parties have not signed an arbitration agreement, they cannot be compelled to arbitrate."[134]

---

[132] *See supra* footnote 124.
[133] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options*, 514 U.S. at 943.
[134] *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F. 3d 528, 537 (5th Cir. 2008).

Here, the parties to the contract are limited to the individual Student Plaintiff and the School[135] listed on each contract.  Thus, the following defendants are not a party to any agreement: (1) Willis Stein & Partners, LLC, (2) Monroe Capital, LLC, (3) Stuart C. Reed[136], (4) Avy Howard Stein, (5) Theodore Koenig, (6) Jackie Baumann, and (7) Erin Shea.[137]

Courts have found a nonsignatory to a contract can compel arbitration in limited situations.[138]  For example, a nonsignatory may compel arbitration if the nonsignatory is a third-party beneficiary.[139]  However, "[w]ho is actually bound by an arbitration agreement is a function of the intent of the parties, as **expressed in the terms of the agreement**."[140]  Here, the Tuition Agreement provides:

> 19.   **NO THIRD PARTY BENEFICIARIES**: The terms and provisions of this Contract are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the parties hereto to confer any third-party beneficiary rights upon any other person or entity.[141]

The express terms of the Tuition Agreement solidify the parties to the Tuition Agreement do not include any "person or entity" other than those explicitly stated in the Tuition Agreement. Therefore, *if* the Court compels Student Plaintiffs to arbitration, Student Plaintiffs request the court to maintain Student Plaintiffs' causes of action against those parties ***not named*** in the Tuition Agreement.  To do so otherwise ignores the very contract VC Defendants urge this Court to embrace and enforce.

---

[135] The school includes the named institution in the contract, Education Corporation of America, and Virginia College, LLC.

[136] Stuart Reed is included in "VC Defendants".  Thus, Plaintiffs request the Court to deny Stuart Reed's request to arbitration *if* the Court decides to find the arbitration agreement(s) are valid and enforceable.

[137] *See Document 5*.

[138] *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd v. Carlisle*, 601 F.3d 329, 333-34 (5th Cir.2010).

[139] *See Jones v. Singing River Health Servs. Found.*, 674 F. App'x 382, 385 (5th Cir. 2017); *Lawson v. Life of the S. Ins.*, 648 F.3d 1166, 1171 (11th Cir.2011).

[140] *Id.* at 538 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 355 (5th Cir. 2003). (emphasis added).

[141] *Document 7-1*, at page 8.

Regardless, VC Defendants request this Court to strike Plaintiffs' Class Action Claims.[142] Again, this motion is brought by three named defendants: (1) Education Corporation of America, (2) Virginia College, LLC, and (3) Stuart Reed.   *If* the Court compels Student Plaintiffs to arbitration, Student Plaintiffs request the court to maintain Student Plaintiffs' class-action claims against: (1) Willis Stein & Partners, LLC, (2) Monroe Capital, LLC, (3) Stuart C. Reed, (4) Avy Howard Stein, (5) Theodore Koenig, (6) Jackie Baumann, and (7) Erin Shea.

For the reasons outlined above, Employee Plaintiffs request the Court the same.

## C.  CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court to deny VC Defendants' motion to compel arbitration and request to strike Plaintiffs' class action claims. Alternatively, Plaintiffs respectfully request the Court to compel claims against Defendants ECA and Virginia College, LLC to one consolidated arbitration proceeding.

---

[142] *Document 7-7.*  This broad request would strike claims against parties (1) not named in this motion and (2) not privy to any contract with any Plaintiff.

Respectfully submitted,

**THE FERGUSON LAW FIRM, LLP**

*/s/ Mark C. Sparks*
Mark Sparks
Texas Bar No. 24000273
mark@thefergusonlawfirm.com
Timothy M. Ferguson
Texas Bar No. 24099479
tferguson@thefergusonlawfirm.com
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700 Phone
(409) 832-9708 Fax

and:

**BAILEY REYES, PLLC**

Christopher A. Bailey
Texas Bar No. 24104549
chris@baileyreyes.com
Julliana Reyes
Texas Bar No. 24103899
julie@baileyreyes.com
470 Orleans Street, Suite 950
Beaumont, Texas 77701
(409) 239-0123 Phone
(409) 895-2363 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2019 a true and correct copy of the foregoing instrument was electronically filed using the authorized ECF system and served on all parties and/or the attorney(s) of record all parties who are registered users of the ECF system, pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this District.

*/s/Mark C. Sparks*
Mark C. Sparks