**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **KARINA GARCIA, MARIA MATA, CHLOE BROOKS, ANITA TREVINO, KARLENE CARPENTER, TANISHA WILLIAMS, SAMUEL TORRES, MARLENE BURCH, ROZEPHYR JEAN, Individually and on Behalf All Others Similarly Situated,** | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) ) | **CASE NO. 18-cv-00621-MAC** |
| **WILLIS STEIN & PARTNERS, L.L.C., MONROE CAPITAL, LLC, EDUCATION CORPORATION OF AMERICA, VIRGINIA COLLEGE, LLC, BRIGHTWOOD COLLEGE, BRIGHTWOOD CAREER INSTITUTE, VIRGINIA COLLEGE, ECOTECH INSTITUTE, STUART C. REED, AVY HOWARD STEIN, THEODORE KOENIG, JACKIE BAUMANN, AND ERIN SHEA,** | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

<u>**WILLIS STEIN & PARTNERS, L.L.C. AND AVY STEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

# **TABLE OF CONTENTS**

**Page**

BACKGROUND ........................................................................................................... 1

    A.    External Events Impacting ECA's Business. .......................................... 2

    B.    ECA's Efforts To Avoid Closure .......................................................... 3

ARGUMENT ............................................................................................................... 4

I.    PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION
OVER THE STEIN DEFENDANTS. ................................................................. 5

    A.    The CAC Does Not Sufficiently Allege General Jurisdiction. .............. 5

    B.    The CAC Does Not Allege Specific Jurisdiction Over The Stein
Defendants. ......................................................................................... 6

    C.    Plaintiffs Have Not Established *Bristol-Myers Squibb* Jurisdiction. ...... 8

II.    EVEN IF THIS COURT HAS JURISDICTION, PLAINTIFFS' CLAIMS ARE
SUBJECT TO ARBITRATION. ........................................................................ 9

III.    PLAINTIFFS' CONTRACT-BASED CLAIMS MUST BE DISMISSED. ................. 10

    A.    Willis Stein Is Not A Party To Any Contract With The ECA Employees. ......... 11

    B.    Plaintiffs' Breach Of The Implied Covenant Of Good Faith And Fair
Dealing Claims Against Willis Stein And Mr. Stein Fail. .................... 13

IV.    PLAINTIFFS' QUASI-CONTRACTUAL CLAIMS FALL ALONGSIDE THEIR
CONTRACTUAL CLAIMS ............................................................................ 14

V.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS FAIL IN THE
ABSENCE OF A FIDUCIARY RELATIONSHIP. .......................................... 16

VI.    ECA EMPLOYEES' WARN ACT CLAIM FAILS BECAUSE WILLIS STEIN
IS EXEMPT FROM THE WARN ACT ............................................................ 17

VII.    ECA STUDENTS' FRAUD ALLEGATIONS FAIL RULE 9(b). ....................... 19

    A.    All Claims That Sound in Fraud Must Be Analyzed Under Rule 9(b). ........ 19

    B.    ECA Students' Group Pleading Does Not Satisfy Rule 9(b). ............... 20

    C.    Where ECA Students Identify A Particular Action Taken By Mr. Stein Or
Willis Stein, The Actions Are Not Alleged To Be Fraudulent. ........... 21

i

## TABLE OF CONTENTS (CONT'D)

D.      ECA Students Have Not Alleged The Requisite Intent To State A Fraud Claim. .................................................................................................... 23

E.      ECA Students' RICO Claims Should Be Dismissed Because They Have Not Alleged A "Pattern" As Required Under RICO. ........................................... 24

VIII.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS DO NOT SATISFY RULE 9(B) AND ARE BASED ON NON-ACTIONABLE FORWARD-LOOKING STATEMENTS. ........................................................................ 26

A.      Plaintiffs' Negligent Misrepresentation Claim Overlaps With ECA Students' Fraud Claims And Must Be Dismissed. ................................................ 26

B.      Plaintiffs' Negligent Misrepresentation Allegations Fail To Satisfy Rule 8. ....... 27

IX.     PLAINTIFFS' CONSPIRACY AND JOINT ENTERPRISE CLAIMS FAIL. .............. 28

A.      Conspiracy Is Not An Independent Cause of Action. ........................................... 28

B.      "Joint Enterprise" Is Not An Independent Cause Of Action And, Even If It Was, Plaintiffs' Barebones Allegations Are Insufficient. ..................................... 29

CONCLUSION ................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Singh*,
   480 F.3d 351 (5th Cir. 2007) ................................................................... 25

*Administaff Companies, Inc. v. New York Joint Bd., Shirt & Leisurewear Div.*,
   337 F.3d 454 (5th Cir. 2003) ................................................................... 18

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) .............................................................................. 28

*Areda v. S-W Transp., Inc.*,
   365 S.W.3d 838 (Tex. App.—Dallas 2012, no pet.) ............................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 11, 29

*Bank One, Texas, N.A. v. Stewart*,
   967 S.W.2d 419 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 11

*Beverick v. Koch Power, Inc.*,
   186 S.W.3d 145 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ..... 17

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
   137 S. Ct. 1773 (2017) ............................................................................. 8

*C.E. Barker, Inc. v. FirstCapital Bank*,
   2005 WL 1177910 (Tex. App.—Corpus Christi May 19, 2005, pet. denied) ... 27

*Cappuccitti v. Gulf Indus. Prod., Inc.*,
   222 S.W.3d 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.) .............. 6

*Cessna Aircraft Co. v. Aircraft Network, L.L.C.*,
   213 S.W.3d 455 (Tex. App.—Dallas 2006, pet. denied) ....................... 16

*Christian v. GK Dev., Inc.*,
   2010 WL 11530842 (E.D. Tex. May 6, 2010) ....................................... 23

*City of Midland v. O'Bryant*,
   18 S.W.3d 209 (Tex. 2000) .................................................................... 14

*Concept Gen. Contracting, Inc. v. Asbestos Maint. Services, Inc.*,
   346 S.W.3d 172 (Tex. App.—Amarillo 2011, pet. denied) .................... 14

*Cunningham v. CBC Conglomerate, LLC*,
   359 F. Supp. 3d 471 (E.D. Tex. 2019) .................................................... 6

*DeBernardis v. NBTY, Inc.*,
   2018 WL 461228 (N.D. Ill. Jan. 18, 2018) .............................................. 9

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Doe v. St. Stephen's Episcopal School*,
2010 WL 11601327 (W.D. Tex. Feb. 26, 2010) ...................................................... 17

*Foxx v. My Vintage Baby, Inc.*,
2014 WL 7272667 (E.D. Tex. Dec. 22, 2014), *aff'd*, 624 F. App'x 318 (5th Cir. 2015) ... 19, 26

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000) ........................................................................ 10

*Gurganus v. Furniss*,
2016 WL 3745684 (N.D. Tex. July 13, 2016) ....................................................... 12

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ................................................................................... 25

*Head v. Las Vegas Sands, Ltd. Liab. Corp.*,
2019 WL 237046 (5th Cir. Jan. 16, 2019) ............................................................ 5

*Hill v. G E Power Sys., Inc.*,
282 F.3d 343 (5th Cir. 2002) ...................................................................... 9, 10

*Hollowell v. Orleans Reg'l Hosp.*,
1998 WL 283298 (E.D. La. May 29, 1998), *aff'd sub nom. Hollowell v. Orleans Reg'l
Hosp. LLC*, 217 F.3d 379 (5th Cir. 2000) ......................................................... 18

*Hux v. S. Methodist Univ.*,
819 F.3d 776 (5th Cir. 2016) .................................................................... 14, 17

*In Re Consolidated Bedding, Inc.*,
432 B.R. 115 (Bankr. D. Del. 2010) ............................................................. 18, 19

*In re Guardianship of Fortenberry*,
261 S.W.3d 904 (Tex. App.—Dallas 2008, no pet.) ............................................... 15

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
193 F.3d 781 (3d Cir. 1999) ........................................................................ 28

*Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*,
995 F. Supp. 2d 587 (N.D. Tex. 2014) ............................................................. 12

*Jones v. Wells Fargo Bank, N.A.*,
2013 WL 4414321 (E.D. Tex. Aug. 13, 2013) ..................................................... 17

*Kitchell v. Aspen Expl., Inc.*,
562 F. Supp. 2d 843 (E.D. Tex. 2007) ............................................................. 26

*Landis v. Benitez*,
2008 WL 11348722 (N.D. Tex. Apr. 21, 2008) ..................................................... 7

*Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc.*,
346 F. Supp. 3d 908 (S.D. Tex. 2018) .............................................................. 7

*Malvino v. Delluniversita*,
840 F.3d 223 (5th Cir. 2016) ....................................................................... 25

## TABLE OF AUTHORITIES (CONT'D)

*Maxwell v. Frost Bank,*
    2016 WL 11200221 (E.D. Tex. Dec. 23, 2016) ....................................... 3

*McAfee, Inc. v. Agilysys, Inc.,*
    316 S.W.3d 820 (Tex. App.—Dallas 2010, no pet.) ............................... 17

*Melder v. Morris,*
    27 F.3d 1097 (5th Cir. 1994) ........................................................... 23, 24

*Miksch v. Exxon Corp.,*
    979 S.W.2d 700 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)................................... 27

*Murillo v. Allstate Vehicle,*
    2018 WL 3862108 (S.D. Tex. Aug. 13, 2018) ....................................... 20

*Nix v. Temple Univ. of the Com. Sys. of Higher Educ.,*
    596 A.2d 1132 (1991) ......................................................................... 28

*Oblio Telecom, Inc. v. Patel,*
    711 F. Supp. 2d 668 (N.D. Tex. 2008) .................................................. 5

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
    253 F.3d 865 (5th Cir. 2001) ............................................................... 6

*Philips v. Deutsche Bank Nat'l Tr. Co.,*
    2011 WL 482839 (W.D. Tex. Feb. 7, 2011) ......................................... 13

*Plotkin v. IP Axess Inc.,*
    407 F.3d 690 (5th Cir. 2005)............................................................... 23

*Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.,*
    406 S.W.3d 609 (Tex. App.—Eastland 2013, no pet.)............................ 15

*Ramirez v. Hariri,*
    165 S.W.3d 912 (Tex. App.—Dallas 2005, no pet.) ................................ 6

*Raven Res., LLC v. Legacy Reserves Operating, LP,*
    363 S.W.3d 865 (Tex. App.—Eastland 2012, pet. denied)..................... 15

*Resolution Tr. Corp. v. Heiserman,*
    898 P.2d 1049 (Colo. 1995) ............................................................... 28

*Romani v. Shearson Lehman Hutton,*
    929 F.2d 875 (1st Cir. 1991) .............................................................. 24

*Ruiz v. CBL & Associates Properties, Inc.,*
    2012 WL 4335305 (Tex. App.—Corpus Christi Sept. 20, 2012, no pet.)............................... 13

*Saucedo v. Horner,*
    329 S.W.3d 825 (Tex. App.—El Paso 2010, no pet.) ............................. 13

*Segner v. Sinclair Oil & Gas Co.,*
    2012 WL 12884861 (N.D. Tex. Oct. 19, 2012), *order clarified, Segner v. Sinclair Oil &
    Gas Co.,* 2012 WL 12885056 (N.D. Tex. Nov. 9, 2012) ....................... 29

## TABLE OF AUTHORITIES (CONT'D)

*Sheppard v. Liberty Mut. Ins. Co.*,
  2016 WL 6807400 (E.D. La. Nov. 17, 2016) ......................................................... 20

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) ......................................................................... 21, 22

*Stuart v. Spademan*,
  772 F.2d 1185 (5th Cir. 1985) ................................................................................ 7

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) ......................................................................... 20, 25

*Tilton v. Marshall*,
  925 S.W.2d 672 (Tex. 1996) ................................................................................. 28

*U.S. ex rel. Hebert v. Dizney*,
  295 F. App'x 717 (5th Cir. 2008) ................................................................ 20, 21, 24

*Ultra Lane Mgmt. v. McKellar*,
  2017 WL 4506813 (E.D. Tex. June 30, 2017) ...................................................... 10

*USAA Texas Lloyds Co. v. Menchaca*,
  545 S.W.3d 479 (Tex. 2018) ................................................................................. 11

*Wealtr Invs., Inc., v. WMC REI LLC*,
  2019 WL 1984131 (E.D. Tex. Apr. 17, 2019) ...................................................... 12

*Whiddon v. Chase Home Fin., LLC*,
  666 F. Supp. 2d 681 (E.D. Tex. 2009) .................................................................. 13

*Willard v. Humana Health Plan of Texas Inc.*,
  336 F.3d 375 (5th Cir. 2003) ................................................................................. 24

*WorldVentures Holdings, LLC v. Mavie*,
  2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ........................................................ 8

**Other Authorities**

20 C.F.R. § 639.3(a)(2) ......................................................................................... 24

29 U.S.C. § 2101(a)(1) ........................................................................................... 23

Plaintiffs[1]—a proposed class of former employees and students of Education Corporation of America ("ECA")—assert claims arising from the closure of campuses operated by defendant ECA.  Not content to assert these claims against ECA directly, Plaintiffs have included as Defendants individuals and corporate entities with varying degrees of connection to ECA, including Willis Stein & Partners, L.L.C. ("Willis Stein"), which is a shareholder of ECA, and Avy Stein, who served as a director of ECA (collectively, the "Stein Defendants").  These campus closures resulted primarily from a cascade of external factors that were outside Defendants' control—including decisions by the federal government and by the entities accrediting ECA—and not any fraudulent scheme by ECA, its managers, directors, or shareholders.

Putting aside the factual inaccuracies in Plaintiffs' First Amended Class Action Complaint ("CAC"), Plaintiffs claims against the Stein Defendants cannot survive a Motion to Dismiss for numerous reasons.  *First*, the CAC does not establish personal jurisdiction over the Stein Defendants.  *Second*, it asserts claims that must be arbitrated pursuant to arbitration agreements entered into by Plaintiffs.  *Third*, the substantive claims against the Stein Defendants impermissibly seek to hold the Stein Defendants liable for the actions of ECA, based on contracts to which the Stein Defendants are not a party.  *Fourth*, despite asserting numerous claims sounding in fraud, the CAC is rife with impermissible group pleading that does not satisfy the strictures of Rule 9(b).  The Stein Defendants therefore request this Court dismiss the CAC in its entirety.

## BACKGROUND

ECA is a for-profit educational company, which until late 2018 operated campuses around the United States.  Willis Stein is a private equity firm that is a shareholder in ECA.  (CAC ¶ 27.)

---

[1]   Plaintiffs are referred to collectively where arguments apply equally to both.  When necessary to distinguish between the groups, the employees are referred to as "ECA Employees" and the students as "ECA Students."

The CAC does not contain any allegations suggesting that ECA and Willis Stein were not wholly separate corporate entities.  Mr. Stein was the Chief Executive Officer and managing partner of Willis Stein.  (*Id.* ¶ 35.)  Mr. Stein served as the Chairman of the Board of Directors of ECA, but the CAC does not allege that Mr. Stein served in any management position for ECA.[2]

### A.      External Events Impacting ECA's Business.

The CAC paints a clear picture of the external factors that negatively impacted ECA's business, ultimately culminating in ECA being placed in federal receivership.  Into 2015, ECA and the Stein Defendants continued to see potential for the expansion of ECA's business.  During that year, ECA acquired 49 additional campuses from Kaplan, Inc.  (*Id.* ¶ 39.)  In the same year, ECA received an additional investment of $72,000,000 from Monroe Capital, which served to recapitalize ECA and support the acquisition of career college campuses from Kaplan.  (*Id.* ¶ 41.)

Between 2015 and the eventual closure of campuses in 2018, the market dynamics surrounding ECA changed markedly.  *First*, beginning in 2015, ECA was placed on Heightened Cash Monitoring ("HCM") by the Department of Education, which resulted in "additional federal oversight of federal student aid funds."  (*Id.* ¶ 40.)  But even following this HCM status, ECA was able to successfully manage its business and operate its campuses for more than three years.  It was not until several other external factors coalesced that ECA was forced to close its campuses.

*Second*, in December 2016, the Department of Education terminated one of ECA's accreditors, the Accrediting Council for Independent Colleges and Schools ("ACICS").  (CAC Ex. 7 at 2.)  The department gave ECA 18 months to find a new accreditor.  (*Id.*)  As a result of this change in policy by the Department of Education, ECA sought accreditation for its various

---

[2]      The Stein Defendants dispute many of the allegations set forth in the complaint.  However, for the purposes of this Motion to Dismiss, Plaintiffs' well-pled allegations are, as they must be, taken as true.

campuses from the Accrediting Council for Continuing Education and Training ("ACCET"). (CAC ¶ 46.)  Despite ECA's efforts, in May 2018, ACCET denied ECA's request for accreditation for several campuses and placed other campuses on "show cause" status to demonstrate why their accreditation should not be withdrawn.  (*Id*.)  ACCET confirmed its decision to deny accreditation to several ECA campuses in August 2018.  (*Id*. ¶ 47.)  At that point, with its accreditation in danger, ECA announced plans to close a subset of its campuses.  (*Id*.)

*Third*, in October 2018, ACICS (its termination by the Department of Education since overturned by the United States District Court for the District of Columbia) likewise placed the remaining ECA campuses on "show cause" status with respect to their accreditation.  (*Id*. ¶ 51.) Barely more than a month later, ACICS withdrew its accreditation of all institutions owned by ECA, leaving those institutions unaccredited.  (*Id*. ¶ 53.)  The next day, ECA announced that all its campuses would be closed.  (*Id*. ¶ 54.)

### B.   ECA's Efforts To Avoid Closure.

While these external forces were buffeting ECA's business, ECA undertook substantial efforts to avoid the resulting closure of its campuses.  While in the midst of its accreditation issues with ACCET, and after determining that it needed to close some of its campuses in order to continue in operation, ECA sought the appointment of a federal receiver in an effort to restructure its obligations.  (*Id*. ¶ 50; *id*. at Ex. 10.)  Although the District Court in the Northern District of Alabama denied this request for the appointment of a receiver, ECA subsequently sought appointment of a receiver in the Middle District of Georgia, and the District Court in Georgia granted this request.  (Ex. 1, Order Appointing Receiver.)[3]

---

[3]   On a motion to dismiss, the Court may take judicial notice of court records.  *Maxwell v. Frost Bank*, 2016 WL 11200221, at *3 (E.D. Tex. Dec. 23, 2016).

ECA filed these petitions to protect its students.  (*See* CAC at Ex. 10, ¶ 1 ("Plaintiffs bring this action . . . in order to enable Plaintiffs to fulfill their mission of educating approximately 20,000 students enrolled in their institutions without interruption or unnecessary disruption of the students' educational plans").)  Instead of an unwieldy closure of the business, which would benefit no one, the hope was that receivership would allow ECA to restructure, raise new money to operate the business, and ultimately keep the campuses open.  (*Id*. ¶ 2 (seeking, *inter alia*, orders permitting the continued operation of the campuses and enjoining eviction proceedings).)  To that end, ECA and the receiver engaged with the federal government to relax cash restraints, with potential new investors to raise capital, and with accreditors to certify the schools.  (Ex. 2, Receiver's Initial Report at 5–10.)  Despite these efforts, ECA and the receiver were ultimately unable to avoid closure of its campuses.  As the federally-appointed receiver stated, "the Receiver directed that the necessary wind-down commence on December 5, 2018" after it had "exhausted all reasonably possible leads for additional funding" for ECA to avoid the closures.  (*Id*. at 10.)

## ARGUMENT

The Stein Defendants request that the Court dismiss the CAC under Rule 12(b)(2) and Rule 12(b)(6).  The CAC: (1) fails to establish personal jurisdiction over the Stein Defendants; (2) asserts claims that must be arbitrated; (3) asserts contract claims against the Stein Defendants where the Stein Defendants are not party to the contract; (4) asserts quasi-contractual claims where an express contract governs the claims; (5) asserts breach of fiduciary duty claims against the Stein Defendants where no fiduciary relationship exists; (6) asserts a WARN Act claim against Willis Stein when Willis Stein cannot be held liable under the standards in the contract; (7) asserts fraud-based claims and a negligent misrepresentations claim that fail to satisfy Rule 9(b); and (8) includes conspiracy and joint enterprise claims that are not independent causes of action.  The CAC should therefore be dismissed.

## I.   PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION OVER THE STEIN DEFENDANTS.

In the CAC, Plaintiffs allege that Willis Stein and Mr. Stein are subject to either general or specific jurisdiction in Texas.  But the Plaintiffs have not pled facts supporting either jurisdictional hook that satisfy their burden to "present[] a prima facie case that personal jurisdiction is proper." *Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 672 (N.D. Tex. 2008).  The CAC contains no allegations of the continuous contacts necessary for Mr. Stein or Willis Stein to be subject to general jurisdiction in Texas, nor does the CAC contain allegations demonstrating that the claims in this suit arise out of *the Stein Defendants'* contacts with Texas, instead impermissibly relying on ECA's contacts with Texas.  Finally, even if some of the Plaintiffs could establish specific jurisdiction over the Stein Defendants in Texas, Plaintiffs who attended or worked at non-Texas campuses cannot independently establish such jurisdiction, and their claims must therefore be dismissed for lack of personal jurisdiction.

### A.   The CAC Does Not Sufficiently Allege General Jurisdiction.

The CAC contains no allegations that establish general jurisdiction over the Stein Defendants.  A court may only exercise general jurisdiction over a defendant whose "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Head v. Las Vegas Sands, Ltd. Liab. Corp.*, 2019 WL 237046, at *3 (5th Cir. Jan. 16, 2019).  For a corporate entity like Willis Stein, this will generally be the state(s) where the corporate entity is incorporated and/or where it maintains its principal place of business.  *Id.* (finding lack of general jurisdiction against corporate entity where neither factor was present).  Here, the CAC alleges that Willis Stein is incorporated in Illinois and has its principal place of business in Illinois.  (CAC ¶ 11.)  Accordingly, the CAC does not establish general jurisdiction over Willis Stein.

5

For an individual, "the paradigm forum for the exercise of general jurisdiction is [his or her] domicile." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 478 (E.D. Tex. 2019). Here, the CAC does not allege that Mr. Stein is a citizen of Texas. Instead, the CAC alleges that "Defendants' numerous campuses and activities within the State of Texas make them essentially at home here, or subject to 'general jurisdiction' in this Court." (CAC ¶ 25.) Such a generalized assertion of contact is not sufficient to support general jurisdiction. *Cunningham*, 359 F. Supp. 3d at 479 (holding allegation that defendant had "continuous and systematic contacts within the State of Texas" was insufficient to establish general jurisdiction).

**B.     The CAC Does Not Allege Specific Jurisdiction Over The Stein Defendants.**

Plaintiffs also assert that specific personal jurisdiction exists over the Stein Defendants in this Court. (CAC ¶ 25.) "[S]pecific jurisdiction . . . exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

Willis Stein is a shareholder of ECA. Generally speaking, "a corporation is a separate legal entity that shields its owners and shareholders from the jurisdiction of a foreign jurisdiction, even if the corporation itself is within the court's jurisdiction." *Cappuccitti v. Gulf Indus. Prod., Inc.*, 222 S.W.3d 468, 481–82 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In order to overcome this general rule and impute the contacts of ECA to its shareholder Willis Stein, the Plaintiffs have the burden to show such imputation is warranted, for instance via veil piercing. *Ramirez v. Hariri*, 165 S.W.3d 912, 915 (Tex. App.—Dallas 2005, no pet.) ("Because there is not an individual basis for personal jurisdiction in Texas over [individual shareholders], the only means of asserting personal jurisdiction is the imputation of [the corporation's] contacts onto these individual shareholders through the theory supporting the piercing of [the corporation's] corporate veil").

6

*Lloyd's Syndicate 457 v. American Global Maritime Inc.* is instructive.  346 F. Supp. 3d 908 (S.D. Tex. 2018).  In that case, the plaintiff brought suit against American Global Maritime and several foreign entities affiliated with American Global Maritime.  *Id.* at 924–25.  The foreign affiliates moved to dismiss the complaint for lack of personal jurisdiction, and the plaintiff responded that the Texas contacts of American Global Maritime should be imputed to the foreign affiliates.  *Id.* at 925.  But the court found jurisdiction lacking because the plaintiff failed to carry its burden to: (1) overcome "the presumption that American Global Maritime is a separate and independent corporation from the foreign companies"; and (2) establish that the contacts should be imputed by showing "a blurring of the corporate lines" between the parties.  *Id.* at 931–34.  Similarly, in this case, beyond a single conclusory allegation that Willis Stein "participated in the decision-making for" ECA (CAC ¶ 27), Plaintiffs have not alleged any facts that would support imputing ECA's contacts to Willis Stein.  Thus, Plaintiffs cannot establish any contact between Willis Stein and the State of Texas to establish specific jurisdiction.

The analysis with respect to Mr. Stein is similar.  Texas has adopted the fiduciary-shield doctrine, which recognizes that "jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation."  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).  In order to overcome this general rule and establish jurisdiction over Mr. Stein, Plaintiffs must demonstrate that "the corporation was operated as an alter ego" of Mr. Stein.  *Landis v. Benitez*, 2008 WL 11348722, at *1 (N.D. Tex. Apr. 21, 2008) ("[I]t is well established that the jurisdictional contacts of a corporation cannot ordinarily be imputed to individual shareholders or officers, absent allegations that the corporation was operated as the alter ego of the individuals.").  And once again, Plaintiffs allege no facts to support a finding that ECA operated as the alter ego of Mr. Stein.  The CAC thus does not contain allegations to support personal jurisdiction over Mr. Stein.

### C.      Plaintiffs Have Not Established *Bristol-Myers Squibb* Jurisdiction.

Even if the CAC contained allegations sufficient to establish specific personal jurisdiction over the Stein Defendants in Texas, that would still not suffice to establish personal jurisdiction over the Stein Defendants with respect to the claims of ECA Students and Employees who did not attend, or work at, a campus in Texas.  As the Supreme Court recently recognized, these non-Texas Plaintiffs cannot piggy-back on the specific jurisdiction for Texas Plaintiffs.  In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017), several hundred plaintiffs filed suit in California against Bristol-Myers Squibb Company ("BMS") arising from the sale of a prescription drug.  The California Supreme Court held that the California courts had specific jurisdiction over BMS with respect to all plaintiffs' claims.  In reversing this decision, the Supreme Court held that even though the California court could exercise specific jurisdiction over the claims of California plaintiffs, that ***did not*** provide a basis for exercising specific jurisdiction with respect to non-residents: "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id*. at 1781.

As in *Bristol-Myers*, the out-of-state ECA Students have no connection to Texas aside from their allegation that they were injured by the same defendants as the Texas plaintiffs.  That is not enough.  *See WorldVentures Holdings, LLC v. Mavie*, 2018 WL 6523306, at *9 (E.D. Tex. Dec. 12, 2018) (dismissing claims of affiliate plaintiffs for lack of personal jurisdiction because "while Barakat and Advanced Wellness have certain contacts with Texas, these contacts are only related to WorldVentures' claims—not those brought by its Affiliates").  For this reason, even if the court allows the Texas Plaintiffs to pursue their claims against the Stein Defendants in this forum— which, for the reasons stated above and below, it should not—the Court should dismiss the claims

of Plaintiffs that did not attend or work at a Texas-based campus for lack of personal jurisdiction over the Stein Defendants.[4]

## II.   EVEN IF THIS COURT HAS JURISDICTION, PLAINTIFFS' CLAIMS ARE SUBJECT TO ARBITRATION.

As explained in the Motion to Compel Arbitration filed by the VC Defendants, each of Plaintiffs' claims are subject to the arbitration agreements found in their enrollment agreements or their employment agreements.  (Dkt. Nos. 7, 15.)  Though the Stein Defendants are not parties to the ECA Students' enrollment agreements or the ECA Employees' employment contracts, Fifth Circuit precedent mandates that the claims against the Stein Defendants must be arbitrated pursuant to those agreements.  A non-signatory to an arbitration agreement can compel arbitration where (1) "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory" *or* (2) "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."  *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 348–49 (5th Cir. 2002). Both of these tests are satisfied here.  Plaintiffs signed written arbitration agreements pertaining to their enrollment or employment, and they are pressing contractual claims against nonsignatory defendants like the Stein Defendants on the basis of that enrollment or employment.  *Id.* Accordingly, these contractual claims satisfy the first prong of the test set forth in *Hill*.

With respect to their tort claims, Plaintiffs assert that the Stein Defendants and the VC Defendants joined together and conspired to defraud the Plaintiffs.  (CAC ¶¶ 125–127.)  This is

---

[4]   This same analysis applies to absent, non-Texas class-members.  *See DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants").

directly akin to the situation in *Hill*, where the Fifth Circuit affirmed the district court's decision to compel arbitration because "[t]he complaint alleged that [the defendants] worked in tandem to misappropriate Canataxx's trade secrets and to fraudulently induce it to contract with them." *Hill*, 282 F.3d at 349.  Based on these allegations, the Fifth Circuit determined that the second prong of the test was satisfied.  *Id.*; *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527–30 (5th Cir. 2000) (noting it would "be especially inequitable" not to permit a non-signatory to compel arbitration where "a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant.").

The relationship between the Stein Defendants and the VC Defendants compels the same conclusion because the Stein Defendants are being sued based on their role as shareholder and director of ECA.  Plaintiffs cannot avoid their arbitration agreements by moving one step up the chain to a non-signatory director or shareholder.  *Ultra Lane Mgmt. v. McKellar*, 2017 WL 4506813, at *4 (E.D. Tex. June 30, 2017) ("In other words, in this lawsuit, Plaintiff has strategically sued Site-Prep's nonsignatory principals or agents for pulling the strings.  Plaintiff cannot avoid the Agreement's arbitration clause through this strategic pleading.  Despite their status as nonsignatories, Defendants can enforce the arbitration clause against Plaintiff under a theory of intertwined claims estoppel, provided Plaintiff's claims fall within the scope of the clause.").  Accordingly, assuming jurisdiction exists, any order this Court gives compelling arbitration should require arbitration of Plaintiffs' claims against the Stein Defendants on the same terms.

## III.   PLAINTIFFS' CONTRACT-BASED CLAIMS MUST BE DISMISSED.

ECA Employees allege breach of contract against Willis Stein, but not Mr. Stein.  (CAC ¶ 105.)  ECA Students assert breach of the implied covenant of good faith and fair dealing against both Stein Defendants, (*id.* ¶¶ 92, 95), while ECA Employees assert this claim against Willis Stein

only (*id*. ¶¶ 114–116).  These claims fail because, as explained herein: (1) there is no contract between Willis Stein and the ECA Employees; and (2) ECA Students fail to allege that a contract existed with the Stein Defendants, much less a breach of that contract.

### A.     Willis Stein Is Not A Party To Any Contract With The ECA Employees.

The ECA Employees assert a claim for breach of contract against Willis Stein, alleging that Willis Stein, along with "Monroe Capital, ECA, Virginia College, LLC, Brightwood College, Brightwood Career Institute, Virginia College and/or Enotech Institute", "entered into various employment contracts" with the ECA Employees.  (*Id.* ¶ 86.)  It is axiomatic that a breach of contract claim requires the existence of a valid contract.  *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (noting existence of a valid contract is the first element of a breach of contract claim).  The ECA Employees do not sufficiently allege the existence of a contract with Willis Stein, even under the more lax pleading standards of Fed. R. of Civ. P. 8 ("Rule 8").

Rule 8 requires that a complaint: (1) state a claim for relief that is plausible, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); and (2) give a defendant "fair notice" of the claims against it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The CAC fails on both counts.  ***First***, an allegation that Willis Stein (a private equity shareholder of ECA) entered into employment agreements with each individual teacher at an ECA campus is not plausible.  Although ECA Employees fail to attach their employment agreements, the allegations in the CAC leave only one reasonable inference: Willis Stein was not a party to the employment contracts.  What is more, Plaintiffs do not even attempt to allege facts supporting a contractual relationship between the ECA Employees and Willis Stein.  They do not allege any individual signed these agreements, or any other employment agreements, on behalf of Willis Stein, or the circumstances under which a shareholder of ECA entered into an employment agreement with these ECA Employees.  Indeed,

the CAC does not identify any such contract or allege any facts about Willis Stein's purported execution of such agreement. In short, such barebones recitals mandate dismissal.

**Second**, the breach of contract claims against Willis Stein fail to provide "fair notice" to Willis Stein of the nature of the claims against it because Plaintiffs impermissibly lodge their allegations against Defendants as a group, rather than specifying each Defendant's purported conduct, as Rule 8 requires. (CAC ¶¶ 105–106; *see Gurganus v. Furniss*, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) ("In addition to being conclusory and formulaic, this type of group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8").) For example, in asserting that numerous Defendants collectively entered into these employment contracts, ECA Employees fail to allege whether Willis Stein *in particular* signed or agreed to be bound by an employment agreement with ECA Employees, or whether ECA Employees are (as they have with other claims) asserting that Willis Stein should be held to be a party to these employment agreements simply by dint of its role as a shareholder in ECA.

Likewise, the ECA Employees have not identified which contractual provisions Willis Stein allegedly breached. Under Texas law, "[t]o plead breach of contract, the party must identify a specific provision of the contract that was allegedly breached." *Wealtr Invs., Inc., v. WMC REI LLC*, 2019 WL 1984131, at *3 (E.D. Tex. Apr. 17, 2019). For example, in *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. 2014), the court dismissed breach of contract claims because the plaintiffs "[did] not identify what provisions were breached or provide factual allegations about the terms of the plans." Here, ECA Employees' conclusory statement that Defendants "breached the terms of their contracts with ECA Employees by failing to provide them with the promised compensation as contracted," (CAC ¶ 108), is not sufficient under Rule 8. *See Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d

681, 692 (E.D. Tex. 2009) (["Plaintiff's] conclusory statement that 'the actions and/or omissions of Defendants described herein above constitute a breach of contract' does not suffice to meet the pleading requirements of Rule 8(a).").[5]  Because ECA Employees have failed to provide fair notice of their breach of contract claim against Willis Stein, this claim should be dismissed.

### B. Plaintiffs' Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claims Against Willis Stein And Mr. Stein Fail.

The tort of breach of the duty of good faith and fair dealing can ***only*** arise from an underlying contract. *Saucedo v. Horner*, 329 S.W.3d 825, 831 (Tex. App.—El Paso 2010, no pet.) ("A claim for breach of duty of good faith and fair dealing is a tort action that arises ***from an underlying contract***") (emphasis added).  Thus, where there is no contract, there can be no breach of duty of good faith and fair dealing.  The discussion in Section III.A., *supra*, shows the ECA Employees have not sufficiently alleged the existence of a contract between ECA Employees and Willis Stein.  For their part, the ECA Students ***do not even allege*** that they have a contract with Willis Stein or Mr. Stein.  (CAC ¶¶ 62–68 (alleging each named-student plaintiff signed a contract with certain Defendants, but not with Stein Defendants).)  Because there is no contract between Plaintiffs and the Stein Defendants, Plaintiffs' breach of duty of good faith and fair dealing claims must be dismissed.

Even if the Stein Defendants had contracts with Plaintiffs, Plaintiffs' claims for breach of implied duty of the covenant of good faith and fair dealing would fail.  Texas law does ***not*** impose an implied duty of good faith and fair dealing in every contract.  *Ruiz v. CBL & Associates Properties, Inc.*, 2012 WL 4335305, at *8 (Tex. App.—Corpus Christi Sept. 20, 2012, no pet.)

---

[5]   If this Court does not dismiss ECA Employees' breach of contract claim, it should at least require ECA Employees to re-plead this claim to properly identify the contractual parties and provisions breached.  *See Philips v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 482839, at *2 (W.D. Tex. Feb. 7, 2011) ("In claims for breach of contract, courts have granted motions for more definite statement where the plaintiff fails to identify specific provisions of specific contracts that were breached.").

("The Texas Supreme Court has specifically rejected the notion that a general duty of good faith and fair dealing is implied in all contracts.")  Instead, the duty of good faith and fair dealing is only recognized where the contract between the parties expressly provides that duty (not alleged here), *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 443 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), or where there is a "special relationship" between the parties.  *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016).  Texas courts do not recognize either the student-university or the employee-employer relationship to create the necessary special relationship.  *See*, *id*. at 783 (no "special relationship" between student and university); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (no "special relationship" between employer and employee).  The Plaintiffs' claims for breach of the implied covenant of good faith should therefore be dismissed.

## IV.    PLAINTIFFS' QUASI-CONTRACTUAL CLAIMS FALL ALONGSIDE THEIR CONTRACTUAL CLAIMS.

The CAC includes three quasi-contractual claims against the Stein Defendants: (1) quantum meruit (by ECA Students, CAC ¶¶ 121–151); (2) promissory estoppel (by ECA Students, *id*.); and (3) unjust enrichment (by ECA Students and Employees, *id*. ¶¶ 214–217). These claims must be dismissed because of the existence of express contracts that govern the transactions about which Plaintiffs complain.

**Quantum Meruit:**  The ECA Students have enrollment agreements with ECA and its subsidiaries, but not with the Stein Defendants.  (*Id*. ¶¶ 62–68.)  These express contracts between the ECA Students and *ECA* do not permit the ECA Students to assert quasi-contractual claims against a non-signatory like the Stein Defendants.  Texas courts hold that, "when a valid express contract covers the services or materials upon which recovery is sought, recovery in *quantum meruit* will not be permitted."  *Concept Gen. Contracting, Inc. v. Asbestos Maint. Services, Inc.*, 346 S.W.3d 172, 185 (Tex. App.—Amarillo 2011, pet. denied).  For example, in *Protocol Techs.,*

*Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 612 (Tex. App.—Eastland 2013, no pet.), a dairy business named J.B. agreed to convey its dairy business to Jeff Whalen.   Before the conveyance was complete, Whalen entered into a contract to buy feed from a cattle feed supplier named Protocol.   After Whalen failed to make payments due under the feed contract, Protocol sued Whalen for breach of contract and J.B. under quantum meruit, alleging Whalen was J.B.'s agent.   The court rejected Protocol's quantum meruit claims against J.B. because an actual contract governed the transaction:

> Generally, a party may not recover under quantum meruit or unjust enrichment if there is an express contract that covers the services or materials furnished.   **This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance**.

*Id*. at 614 (emphasis added).   Here, the ECA Students' enrollment agreements govern the "services" (ECA's operation of the schools) that form the basis of relief.   (*See* CAC ¶¶ 62–68.) The ECA Students cannot circumvent this express-contract rule by bringing claims against non-contractual parties Willis Stein and Mr. Stein.

**Unjust Enrichment:** As with quantum meruit, "there can be no recovery for unjust enrichment when an express contract covers the subject matter of the dispute."   *Raven Res., LLC v. Legacy Reserves Operating, LP*, 363 S.W.3d 865, 871 (Tex. App.—Eastland 2012, pet. denied); *see also In re Guardianship of Fortenberry*, 261 S.W.3d 904, 916 (Tex. App.—Dallas 2008, no pet.) ("a party cannot recover under quantum meruit or unjust enrichment for services provided under a contract").   As such, both the ECA Student and Employee plaintiffs must seek recovery under their contracts, not against the Stein Defendants.[6]

---

[6]   Moreover, unjust enrichment is not a stand-alone claim, but is tied to the claims for quantum meruit and promissory estoppel.   Because those should be dismissed, the unjust enrichment claims must fail too.   *See In re Guardianship of Fortenberry*, 261 S.W.3d at 915 ("Unjust enrichment is not an independent cause of action, but

**Promissory Estoppel:** Like ECA Students' quantum meruit claim, their "claim for promissory estoppel can only exist if there is no contract." *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 468 (Tex. App.—Dallas 2006, pet. denied). Consequently, the following allegations of ECA Students, which are group-pled against defendants generally, cannot establish claims for promissory estoppel because they stem from their enrollment agreements:

- CAC ¶ 93: alleging promise in enrollment agreement to pay Students a "full refund . . . if educational service is discontinued by the Institution, preventing the Student from Completing." (Emphasis removed.)

- *Id.* ¶ 95: alleging that non-Stein Defendants failed to "provide them with the promised products and services as contracted."

- *Id.* ¶ 150: alleging contractual promises to pay for other coursework or reimburse tuition payments.

Accordingly, this Court should dismiss the promissory estoppel claims against the Stein Defendants because the alleged "promises" were either covered by the ECA Students' contracts or not pled specifically against the Stein Defendants.

## V.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS FAIL IN THE ABSENCE OF A FIDUCIARY RELATIONSHIP.

Both the ECA Students and Employees allege that Willis Stein and Mr. Stein breached fiduciary duties owed to Plaintiffs. (*Id.* ¶¶ 171–181.) These claims must be dismissed because, as a matter of law, there was no fiduciary relationship between the Stein Defendants and any of the Plaintiffs. There are two types of fiduciary relationships under Texas law: (1) formal fiduciary relationships that arise as a matter of law, such as partnerships and principal-agent relationships; and (2) informal fiduciary relationships or "confidential relationships" that may arise from moral, social, domestic, or personal relationships. *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829

---

rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay.").

(Tex. App.—Dallas 2010, no pet.).  The number of recognized "confidential relationships" is small because "[a] fiduciary duty is an extraordinary duty which will not be lightly created." *Areda v. S-W Transp., Inc.*, 365 S.W.3d 838, 841 (Tex. App.—Dallas 2012, no pet.).

Critically, the Fifth Circuit, interpreting Texas law, has rejected the notion that the student-university relationship is the type of confidential or special relationship required to create a fiduciary duty.  *S. Methodist Univ.*, 819 F.3d at 783.[7]  As for ECA Employees, they cannot dispute that "Texas does not recognize a fiduciary duty or a duty of good faith and fair dealing owed by an employer to an employee." *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 153 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Jones v. Wells Fargo Bank, N.A.*, 2013 WL 4414321, at *9 (E.D. Tex. Aug. 13, 2013) (dismissing employee's breach of fiduciary duty claim against employer, noting no fiduciary relationship exists between employer and employee).  In sum, because, under Texas law, ECA itself does not owe fiduciary duties to Plaintiffs, neither does Willis Stein, ECA's private equity sponsor, and Mr. Stein, an ECA board member.

## VI.  ECA EMPLOYEES' WARN ACT CLAIM FAILS BECAUSE WILLIS STEIN IS EXEMPT FROM THE WARN ACT.

ECA Employees allege a WARN Act claim against Willis Stein.  (CAC ¶ 195.)  This claim fails because Willis Stein and ECA did not operate as a "Single Business Enterprise."  The WARN Act only applies to an "employer," defined as a "business enterprise."  29 U.S.C. § 2101(a)(1). Parent or subsidiary companies can only be "held directly liable for violating the WARN Act if they, along with [the offending subsidiary or parent], are considered to be a single 'business enterprise' within the meaning of the WARN Act." *Hollowell v. Orleans Reg'l Hosp.*, 1998 WL

---

[7]   Some courts have found schools may owe fiduciary duties to students if, for example, the school acts *in loco parentis*. *Doe v. St. Stephen's Episcopal School*, 2010 WL 11601327, at * 3 (W.D. Tex. Feb. 26, 2010) (Catholic boarding school owed fiduciary duties to its fifteen-year-old student because the school admitted it acted *in loco parentis*).  However, ECA Students have not alleged that ECA and its subsidiaries acted *in loco parentis*, or that the Stein Defendants owed them a fiduciary duty for any other reason.

283298, at *10 (E.D. La. May 29, 1998), *aff'd sub nom. Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379 (5th Cir. 2000).  To determine whether a parent and subsidiary companies are a single enterprise under the WARN Act, the Fifth Circuit considers whether the companies have: (1) common ownership; (2) common directors and/or officers; (3) de facto exercise of control; (4) unity of personnel policies emanating from a common source; and (5) dependency of operations.  *Administaff Companies, Inc. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 458 (5th Cir. 2003) (adopting 20 C.F.R. § 639.3(a)(2)).  Plaintiffs fail to allege facts supporting this five-factor test and instead impermissibly rely on bare legal conclusions.  Thus, their WARN Act claim fails.

*In Re Consolidated Bedding, Inc.*, 432 B.R. 115 (Bankr. D. Del. 2010), is on point.  In that case, plaintiffs were employees of mattress manufacturing companies, and the defendant was a private equity firm, American Capital, which was lead financier and equity holder of those companies.  The court dismissed plaintiffs' WARN Act claim against American Capital at the motion to dismiss stage, applying the five-factor test for "single business enterprise" as follows:

1. **Common Ownership**: Satisfied because American Capital was the "majority shareholder and/or majority equity holder and lead financial sponsor" of the mattress companies.  *Id.* at 121.  This is also true of Willis Stein and ECA.

2. **Common Directors And/Or Officers**:  Not satisfied because, even though American Capital employees filled four out of five board seats at the mattress companies, the American Capital employees were not also directors of American Capital.  *Id.* at 122.  Here, ECA Employees have not alleged the existence of common directors or officers between ECA and Willis Stein.

3. **De Facto Exercise Of Control**:  Not satisfied because plaintiffs did not allege facts "showing that the AmCap Directors were wearing their American Capital 'hats' while making difficult decisions for the Debtors to close the Facilities."  *Id.*  ECA Employees here have also failed to make any such allegations.

4. **Unity Of Personnel Policies Emanating From A Common Source**:  Not satisfied because plaintiffs did not allege facts showing "the nominally separate corporations actually functioned as a single entity with respect to [personnel] policies on a regular, day-to-day basis," and noting that because "American Capital is in the investment business and the Debtors are in the mattress manufacturing business, it seems unlikely that Plaintiffs could ever demonstrate an

integration of operations satisfying the unity of personnel policies factor." *Id*.  The CAC is similarly devoid of allegations of this kind against Willis Stein.

5. **Dependency Of Operations**: Not satisfied because plaintiffs did not allege "existence of agreements to share administrative or purchasing services, exchanges of employees or equipment and commingled finances."  *Id*.  ECA Employees make no such allegations here.

As in *In Re Consolidated Bedding, Inc.*, four of the five factors required to hold Willis Stein, an equity sponsor, liable as part of a "single business enterprise" are not satisfied.  ECA Employees' WARN Act claim should therefore be dismissed.

## VII.   ECA STUDENTS' FRAUD ALLEGATIONS FAIL RULE 9(b).

ECA Students bring claims for "Fraud, Misrepresentation Deceit" (CAC ¶¶ 121–151), violations of the Texas Deceptive Trade Practices Act ("DTPA") (*id*. ¶¶ 196–208), and the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (*id*. ¶¶ 209–213).  These claims, all of which sound in fraud, must be dismissed because they are not supported by specific factual allegations that satisfy Rule 9(b).  Looking at the few allegations that Plaintiffs specifically plead as against the Stein Defendants, none support a claim for fraud.  And independently, Plaintiffs do not sufficiently allege the requisite intent to support a fraud-based claim against the Stein Defendants.

### A.    All Claims That Sound in Fraud Must Be Analyzed Under Rule 9(b).

Each of these claims sounds in fraud and must, therefore, satisfy the heightened requirements of Rule 9(b).  *First*, ECA Students' "Fraud, Misrepresentation Deceit" claims are common law fraud claims subject to the heightened pleading requirements of Rule 9(b).  *Foxx v. My Vintage Baby, Inc.*, 2014 WL 7272667, at *3 (E.D. Tex. Dec. 22, 2014), *aff'd*, 624 F. App'x 318 (5th Cir. 2015) (noting "there is no recognized cause of action for 'general fraud and misrepresentation'" but Rule 9(b) applies to such claims because, "in the light most favorable to plaintiff . . . the court construes Plaintiff's . . . 'general fraud and misrepresentation' claim as a

claim of common law fraud"). **Second**, ECA Students' DTPA claims sound in fraud and are therefore subject to Rule 9(b). *See Murillo v. Allstate Vehicle*, 2018 WL 3862108, at *2 (S.D. Tex. Aug. 13, 2018) ("claims alleging violations of . . . the DTPA . . . are subject to the requirements of Rule 9(b)") (collecting cases). **Third**, the only predicate acts that ECA Students alleged in their RICO count are "wire fraud and mail fraud." (CAC ¶¶ 211–212.) And Rule 9(b)'s "particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992).

### B.   ECA Students' Group Pleading Does Not Satisfy Rule 9(b).

The first shortcoming in the ECA Students' fraud-based claims lies in the group pleading that underlies nearly all factual allegations. "Group pleading is impermissible under Rule 9(b)." *Sheppard v. Liberty Mut. Ins. Co.*, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016). This means "broad claims against numerous defendants without identifying specific actions of specific individuals at specific times" must be dismissed. *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008) (internal quotations omitted). The rationale behind this rule is straightforward: group pleading deprives an individual defendant of knowledge of the specific fraudulent acts or omissions a plaintiff is claiming. Applying this principle in *Dizney*, the Fifth Circuit affirmed dismissal of a False Claims Act complaint against 21 corporate and 6 individual defendants because the complaint "fail[ed] … to specify 'the identity of the person making the misrepresentation' beyond 'defendants.'" *Id.*

The CAC suffers from the same defect. ECA Students repeatedly impute statements to large groups of defendants—joined by the phrase "and/or"—without attributing any specific statement to any individual defendant. *See, e.g.*, CAC ¶ 103 ("and/or" 11 defendants "acted with oppression, fraud and malice"); *id.* ¶ 120 ("and/or" 9 defendants "acted with oppression, fraud and

20

malice").  Though the CAC runs 253 paragraphs, ECA Students' fraud claims boil down to three

alleged misrepresentations, each of which is group pled:

- **September 2018 Correspondence To Sunset Campus Presidents**: "In September 2018, Defendants Willis Stein & Partners, Monroe Capital, ECA, Virginia College, LLC, Brightwood College, Brightwood Career Institute, Virginia College, Ecotech Institute, Avy Stein, Erin Shea and/or Stu Reed directed all 'Sunset Campus' campus presidents to misrepresent to "Sunset Campus" students that (1) the students would be able to complete their respected programs before any campus closure; and/or (2) the students would receive a full-tuition reimbursement in the event their campus closed down before course completion."  (*Id.* ¶ 125.)

- **November 8, 2016 Email Regarding Campus Closures**: "Defendants Willis Stein & Partners, Monroe Capital, ECA, Virginia College, LLC, Brightwood College, Brightwood Career Institute, Virginia College, Ecotech Institute, Avy Stein, Erin Shea and/or Stu Reed directed several campus presidents to send ECA Students an email stating, "At this time, there is no impact to your eligibility for federal student financial aid, **nor should there be any disruption to your program.**"  (*Id.* ¶ 126 (emphasis in original).)

- **November 8, 2016 Email Regarding "Teach-Out" Programs**: "Defendants Willis Stein & Partners, Monroe Capital, ECA, Virginia College, LLC, Brightwood College, Brightwood Career Institute, Virginia College, and/or Ecotech Institute promised ECA Students that *if* their campus(es) closed, the students would be able to transfer all of their credits (with no additional costs) to an established 'teach-out program'." (*Id.* ¶ 127 (emphasis in original).)

These allegations do not, as they must, "specify the identity of the person making the

misrepresentation beyond" listing the defendants.  *Dizney*, 295 F. App'x at 722.  As such, the

fraud-based claims must be dismissed.

> **C.    Where ECA Students Identify A Particular Action Taken By Mr. Stein Or Willis Stein, The Actions Are Not Alleged To Be Fraudulent.**

In the rare instances where ECA Students allege specific actions of Mr. Stein or Willis

Stein apart from the rest of the Defendants, the alleged acts do not give rise to a claim for fraud.

To plead fraud, plaintiffs cannot rely upon actions of the corporation to impute liability as against

individuals (such as executives or officers).  *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365

F.3d 353 (5th Cir. 2004).  In *Southland*, plaintiffs alleged that officers of a corporation committed

securities fraud, attributing statements made in the corporation's public filings to a group of officers that plaintiffs alleged "controlled the contents of and participated in writing" the allegedly fraudulent filings.  *Id*. at 365.  The district court dismissed the fraud claims as group-pled.  *Id*.  The Fifth Circuit affirmed, holding "[c]onsistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."  *Id*.

Applying this standard, ECA Students' allegations against Willis Stein are fatally sparse.  ECA Students do not identify ***any*** representations or communications made directly by Willis Stein.  Instead, they allege only that Willis Stein "own[ed]/operate[ed]" ECA and "participated in the decision-making for" ECA.  (CAC ¶ 27.)  On this basis, ECA Students impute a number of representations made by different employees of ECA and its affiliates to Willis Stein.  (*Id*. ¶¶ 125–127.)  But Willis Stein "may not be held responsible for unattributed corporate statements solely on the basis of [its] titles, even if [its] general level of day-to-day involvement in the corporation's affairs is pleaded."  *Southland Sec. Corp.*, 365 F.3d at 365.  Accordingly, ECA Students cannot rely on ECA's statements to establish these fraud-based claims against Willis Stein.  *Id*.

ECA Students' two allegations regarding Mr. Stein fail for similar reasons.  ***First***, like their allegations against Willis Stein, ECA Students allege Mr. Stein "controlled/directed business decisions and strategies for both ECA and Brightwood."  (CAC ¶ 45.)  Again, such allegations of "general level of day-to-day involvement" in ECA's affairs do not permit ECA's statements to be imputed to Mr. Stein for the purpose of pleading fraud.  *Southland Sec. Corp.*, 365 F.3d at 365.

***Second***, where ECA Students allege specific actions by Mr. Stein, their allegations do not state a fraud claim.  Specifically, ECA Students allege that, at a conference in Nashville in April

2018, "Defendant Avy Stein spoke about (1) the financial status of both ECA and Brightwood, (2) the accreditation process, (3) ECA's potential purchase of Vatterott College, and (4) the strategic roadmap for ECA and Brightwood."  (CAC ¶ 45.)  As an initial matter, these allegations only describe generally what Mr. Stein "spoke about," not what he specifically said, as is required under Rule 9(b).  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (fraud plaintiff must specify "the statements (or omissions) considered to be fraudulent").  Further, ECA Students do not allege they relied upon Mr. Stein statements, why the statements were made, or why there were false—all of which are necessary to allege fraud based on these statements.  *Id*. (fraud plaintiff must specify "why the statements were made, and an explanation why they are fraudulent"); *Christian v. GK Dev., Inc.*, 2010 WL 11530842, at *4 (E.D. Tex. May 6, 2010) ("Reliance is a necessary element of fraud") (internal quotations omitted).  In sum, ECA Students have not alleged any of the elements of fraud with respect to Mr. Stein's April 2018 representations.

> **D.     ECA Students Have Not Alleged The Requisite Intent To State A Fraud Claim.**

Independently, ECA Students have not adequately alleged the Stein Defendants' intent to state a fraud claim.  To plead fraud, the complaint must "set forth specific facts to support an inference of fraudulent intent."  *Melder v. Morris*, 27 F.3d 1097, 1102 n.5 (5th Cir. 1994).  Applying this requirement, the Fifth Circuit has repeatedly held that plaintiffs may not simply allege that because a corporation stood to profit from a fraud, its directors and officers therefore possessed the requisite intent to commit fraud.  *Id*.  In *Melder*, plaintiffs brought securities and common law fraud claims against officers and directors of a corporation.  *Id*. at 1099.  Plaintiffs alleged that the officers and directors had a financial incentive to make misrepresentations regarding the company's financial well-being because they received incentive compensation.  *Id*. at 1102.  The district court dismissed both the securities and common law fraud claims, and the Fifth Circuit affirmed, holding that "[a]ccepting the plaintiffs' allegation of motive—basically that

the defendant officers and directors were motivated by incentive compensation—would effectively eliminate the state of mind requirement as to all corporate officers and defendants.  The district court aptly dubbed this allegation 'a nihilistic approach to Rule 9(b) jurisprudence.'  Simply put, the lone allegation of motive is insufficient."  *Id.* (internal citations omitted).

The same reasoning applies here.  ECA Students allege that all of the Defendants intended "to 'dupe' them into continuing to pay for and/or purchasing" services from ECA.  (CAC ¶ 132.) But the CAC is devoid of any allegation that the Stein Defendants stood to gain from continued payments, aside from their general interest in ECA's success as a business.  Moreover, while the Fifth Circuit has held that fraudulent intent may be pled on information and belief when information about the perpetrator's intent is "peculiarly within the perpetrator's knowledge," *Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003), it has stressed that "[p]leading on information and belief does not otherwise relieve a . . . plaintiff from the requirements of Rule 9(b)."  *Dizney*, 295 F. App'x at 723.  Here, ECA Students fail to take even the first step of pleading—even on information and belief—that the Stein Defendants themselves had any particular motive to commit fraud.  Nor have they pled any source of information or reasons to believe the Stein Defendants possessed the requisite intent, dooming their fraud claims. *See Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) ("Where allegations of fraud are ... based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief").  For all of these reasons, ECA Students' claims that sound in fraud—*i.e.*, their DTPA, RICO, and common-law fraud claims—should be dismissed.

### E.  ECA Students' RICO Claims Should Be Dismissed Because They Have Not Alleged A "Pattern" As Required Under RICO.

Even if ECA Students have alleged fraud with the requisite particularity, their RICO claims should be dismissed for the separate and independent reason that they have not alleged a "pattern"

of fraud sufficient to sustain a RICO claim.  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (elements of a RICO claim are: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.").  Under RICO, there are two ways to demonstrate the continuity required to establish a pattern: (1) a "closed period of repeated conduct;" or (2) an open-ended period of conduct that "by its nature projects into the future with a threat of repetition."  *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016).  ECA Students have not pled either.

    *First*, they have not pled a sufficiently long "closed period of repeated conduct."  *Id*.  The Supreme Court has held that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" the closed period requirement.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).  The Fifth Circuit has since held that seven months of activity is insufficient.  *Tel–phonic Services, Inc.*, 975 F.2d at 1140 (affirming dismissal of RICO claim and holding "allegations of the complaint suggest no 'series' of racketeering acts with the level of continuity that is required for a RICO violation" because the "two alleged instances of fraud occurred only seven months apart"); *see also Malvino*, 840 F.3d at 232 ("Despite the numerous acts of mail and wire fraud that occurred from the sale of coins to [plaintiff] between January and May 2011, that five month period [i]s too short a period to establish closed-ended continuity.").  Here, all of ECA Students' fraud allegations occurred within a period of three months—from September to December 2018.  (*See* CAC ¶¶ 125–127 (alleged misrepresentations occurred between September and November of 2018).)  *Second*, ECA Students have not, because they cannot, alleged an open-ended period of conduct that "by its nature projects into the future with a threat of repetition."  *Malvino*, 840 F.3d at 231.  As a logical matter, there is no "threat of repetition" here.  All of ECA Students' harms stem from the campus closures, which have already

occurred.  For these reasons, in addition to the reasons stated above, ECA Students RICO claims

should be dismissed.

## VIII. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS DO NOT SATISFY RULE 9(B) AND ARE BASED ON NON-ACTIONABLE FORWARD-LOOKING STATEMENTS.

ECA Students and ECA Employees both attempt to state claims for "negligent

misrepresentation."  (CAC ¶¶ 153–161 (students); *id.* ¶¶ 163–170) (employees).)  These claims

must be dismissed because: (1) the negligent misrepresentation allegations must be analyzed under

Rule 9(b) and fail for the same reasons as the fraud-based claims; and (2) even under the more

forgiving Rule 8 standard, the alleged statements concerning future events cannot serve as the

basis for a negligent misrepresentation claim.

### A.     Plaintiffs' Negligent Misrepresentation Claim Overlaps With ECA Students' Fraud Claims And Must Be Dismissed.

Rule 9(b) "governs the pleading requirements for negligent misrepresentation claims when

the fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible

to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent

misrepresentation claim."  *Foxx*, 2014 WL 7272667, at *3 (internal quotation omitted).  For

example, in *Kitchell v. Aspen Expl., Inc.*, 562 F. Supp. 2d 843 (E.D. Tex. 2007), a plaintiff brought

separate counts for fraud and negligent misrepresentation.  *Id.* at 852.  In considering the plaintiff's

fraud claim, the court held that the majority of the allegations did not satisfy the requirements of

Rule 9(b).  *Id.*  In analyzing the negligent misrepresentation count, the court noted that the

negligent misrepresentation claim was "factually inseparable" from the fraud claim and that

plaintiff had "simply incorporate[d] the fraud-based allegations against Defendants and attache[d]

another label to them."  *Id.*  Accordingly, the court concluded that the "negligent misrepresentation

claim fails for the reasons each of its fraud claims fail."  *Id.* at 852–853.

This analysis applies in spades to the CAC.  The alleged negligent misrepresentations—which pertain to the timing of campus closures, the financial stability of ECA, and tuition reimbursement—are precisely the same misrepresentations that ECA Students rely upon in stating their fraud claim.  (*Compare* CAC ¶¶ 125–127 *with* ¶¶ 153, 163.)  Accordingly, the allegations of negligent misrepresentation are subject to Rule 9(b) and fail for the reasons articulated above in Section VII.

### B.    Plaintiffs' Negligent Misrepresentation Allegations Fail To Satisfy Rule 8.

Even if Plaintiffs' negligent misrepresentation claims were analyzed under Rule 8's more lenient standards, the allegations still fail to state a claim because they are based on statements about future conduct.  Unlike a fraud claim, a claim for negligent misrepresentation can ***never*** be based on a promise of future conduct.  *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (holding negligent misrepresentation claim could not proceed where alleged misrepresentation was promise not to terminate employee and explaining, "[t]o prevail on a claim for negligent misrepresentation, the plaintiff must prove, among other things, that the defendant misrepresented an *existing* fact in the course of the defendant's business") (emphasis in original).

In the CAC, Plaintiffs allege that all Defendants made a number of promises regarding keeping the campuses open long enough to allow them to finish their courses of study (in the case of students) or keep their jobs (in the case of employees).  (*See* CAC ¶¶ 122–127, 163.)  These statements regarding whether campuses would close, who would be reimbursed if they did, and whether employees would remain employed in the future are not statements of existing fact.  To the contrary, they are precisely the type of promise of future conduct that ***cannot*** serve as the basis for a negligent misrepresentation action.  *See, e.g.*, *C.E. Barker, Inc. v. FirstCapital Bank*, 2005 WL 1177910, at *6 (Tex. App.—Corpus Christi May 19, 2005, pet. denied) (affirming grant of

summary judgment as to negligent misrepresentation claim because promise to advance funds was "not a statement of existing fact and [wa]s instead a conditional promise of future conduct"). Because these allegations cannot serve as the basis for a negligent misrepresentation claim, dismissal of Plaintiffs negligent misrepresentation claims is warranted.

## IX.    PLAINTIFFS' CONSPIRACY AND JOINT ENTERPRISE CLAIMS FAIL.

The CAC states "Conspiracy Claims" (CAC ¶¶ 218–225) and a claim for "Joint Enterprise" (*Id.* ¶¶ 226–235).   Neither can survive because neither is an independent cause of action.

### A.    Conspiracy Is Not An Independent Cause of Action.

"The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability." *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct").  Indeed, the Supreme Courts of every state where Plaintiffs reside, attended school, or worked for ECA have so held:

- **Texas** (CAC ¶¶ 62–64, 69–70):  "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

- **California** (CAC ¶¶ 65–66):  "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).

- **Pennsylvania** (CAC ¶ 67):  "Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy." *Nix v. Temple Univ. of the Com. Sys. of Higher Educ.*, 596 A.2d 1132, 1137 (1991).

- **Colorado** (CAC ¶ 68) Conspiracy claims require "an agreement … that resulted in a tortious act." *Resolution Tr. Corp. v. Heiserman*, 898 P.2d 1049, 1057 (Colo. 1995).

Accordingly, Plaintiffs' "conspiracy" claims must be dismissed alongside their other claims, for the reasons stated herein.  *See Tilton*, 925 S.W.2d at 681 (dismissing conspiracy claim after dismissing underlying fraud claim).

**B.**    **"Joint Enterprise" Is Not An Independent Cause Of Action And, Even If It Was, Plaintiffs' Barebones Allegations Are Insufficient.**

Plaintiffs claim the Stein Defendants were members of a "joint enterprise" such that they should be liable for certain torts committed by their co-defendants.  (CAC ¶¶ 226–235.)  As an initial matter, Plaintiffs' separate count alleging "joint enterprise" should be dismissed because joint enterprise is a theory of vicarious liability, not an independent cause of action.  *See Segner v. Sinclair Oil & Gas Co.*, 2012 WL 12884861, at *6 (N.D. Tex. Oct. 19, 2012), *order clarified*, *Segner v. Sinclair Oil & Gas Co.*, 2012 WL 12885056 (N.D. Tex. Nov. 9, 2012) ("to the extent that Plaintiff asserts independent causes of action for partnership and joint enterprise . . . his claims are DISMISSED").

Separately, Plaintiffs' joint enterprise theory should be dismissed as inadequately pled.  Plaintiffs baldly state that all four elements are present here (CAC ¶ 228), but such "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," without any factual support, are insufficient to overcome a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  To wit, it is entirely unclear from Plaintiffs' threadbare recital of the elements what exactly constitutes the "enterprise" here.  Is it ECA itself?  A separate group?  Why have some defendants been included in the "joint enterprise," but not others?  Without any further explication from Plaintiffs, defendants are left to guess, which is precisely what Rule 8 proscribes.  Dismissal is proper.

## CONCLUSION

For the reasons stated above and in the accompanying memorandum, the Stein Defendants respectfully request that this Court dismiss the claims against the Stein Defendants for lack of personal jurisdiction.  Alternatively, the Stein Defendants request that this Court compel the claims against the Stein Defendants to be arbitrated, or, if it reaches the merits of the CAC, dismiss the claims in the CAC as they pertain to the Stein Defendants.

Dated:  May 15, 2019

/s/ Sarah E. Williams
Sarah E. Williams (TX Bar No. 24075285)
KIRKLAND & ELLIS LLP
609 Main Street
Houston, Texas  77002
Telephone:  (713) 836-3600
Facsimile:   (713) 836-3601
Email:        sarah.williams@kirkland.com

Stephen C. Hackney, P.C. (IL Bar No. 6243053)
Casey J. McGushin (IL Bar No. 6313465)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
Email:        shackney@kirkland.com
Email:        casey.mcgushin@kirkland.com

*Attorneys for Defendants*
*Willis Stein & Partners, L.L.C. and Avy Stein*

## CERTIFICATE OF SERVICE

I, Sarah E. Williams, an attorney, hereby certify that the above and foregoing **WILLIS STEIN & PARTNERS, L.L.C. AND AVY STEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** has been electronically filed with the Clerk of the Court using the CM.ECF system, which will send a notice of electronic filing to all counsel of record, this 15th day of May, 2019.

Mark Sparks
Timothy M. Ferguson
**THE FERGUSON LAW FIRM, LLP**
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700 Phone
(409) 832-9708 Fax
mark@thefergusonlawfirm.com
tferguson@thefergusonlawfirm.com

Christopher A. Bailey
Julliana Reyes
**BAILEY REYES, PLLC**
470 Orleans Street, Suite 950
Beaumont, Texas 77701
(409) 239-0123 Phone
(409) 895-2363 Fax
chris@baileyreyes.com
julie@baileyreyes.com

Scott S. Brown
Ollie A. "Tres" Cleveland, III
**MAYNARD, COOPER, & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203
T. (205) 254-1000
F. (205) 254-1999
Email: scottbrown@maynardcooper.com
Email: tcleveland@maynardcooper.com

*/s/ Sarah E. Williams*
Sarah E. Williams