**UNITED STATES DISTRICT COURT**  **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| KARINA GARCIA, MARIA MATA, CHLOE BROOKS, ANITA TREVINO, KARLENE CARPENTER, TANISHA WILLIAMS, SAMUEL TORRES, MARLENE BURCH, and ROZEPHYR JEAN, *Individually and on Behalf of All Others Similarly Situated*, | § § § § § § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:18-CV-621 |
| WILLIS STEIN & PARTNERS, L.L.C., MONROE CAPITAL, LLC, EDUCATION CORPORATION OF AMERICA, VIRGINA COLLEGE, LLC, BRIGHTWOOD COLLEGE, BRIGHTWOOD CAREER INSTITUTE, VIRGINIA COLLEGE, ECOTECH INSTITUTE, STUART C. REED, AVY HOWARD STEIN, THEODORE KOENIG, JACKIE BAUMANN, and ERIN SHEA, | § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants Education Corporation of America ("ECA"),

Virginia College, LLC ("Virginia College"),[1] and Stuart C. Reed's (collectively, the "VC

Defendants") Renewed Motion to Compel Arbitration and to Strike Plaintiffs Karina Garcia, Maria

Mata, Chloe Brooks, Anita Trevino, Karlene Carpenter, Tanisha Williams, Samuel Torres,

Marlene Burch, and Rozephyr Jean's (collectively, "Plaintiffs") Class Action Claims (#36).  The

VC Defendants contend that Plaintiffs have waived their right to litigate their claims in a judicial

---

[1] References to "Virginia College" encompass its DBAs:  Defendants Brightwood College, Brightwood Career Institute, and Ecotech Institute.

forum and to participate in a class proceeding.  After considering the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the motion should be granted.

I.    Background

Plaintiffs, individually and on behalf of all others similarly situated, assert claims against the VC Defendants and others who are not parties to the motion at bar—Defendants Willis Stein & Partners, L.L.C.; Monroe Capital, LLC; Avy Howard Stein; Theodore Koenig; Jackie Baumann; and Erin Shea—in connection with the abrupt closure of several Virginia College campuses.   Plaintiffs Karina Garcia, Maria Mata, Chloe Brooks, Anita Trevino, Karlene Carpenter, Tanisha Williams, and Samuel Torres (the "Student Plaintiffs") contend that the closures prevented them from completing programs pursuant to their enrollment contracts and that they never received a refund for the costs of attendance, which they paid for with out-of-pocket funds or with student loans that cannot be discharged.  Plaintiffs Marlene Burch and Rozephyr Jean (the "Employee Plaintiffs") assert that Virginia College misrepresented its employees' job security and failed to deliver payments promised in severance packages.

On February 8, 2019, Plaintiffs filed their First Amended Class Action Complaint (#5), asserting causes of action for breach of contract arising from the Student Plaintiffs' enrollment contracts and Employee Plaintiffs' employment contracts with the VC Defendants.  On February 15, 2019, the VC Defendants filed their Motion to Compel Arbitration and to Strike Plaintiffs' Class Action Claims.  Plaintiffs filed a response (#12) on March 7, 2019, and the VC Defendants filed their reply (#15) on March 21, 2019.  On June 5, 2019, Plaintiffs filed their Second

Amended Class Action Complaint (#30), the operative complaint in this action.[2]  Subsequently, the VC Defendants filed the instant motion, reurging their motion to compel arbitration.

The VC Defendants request that the court:  (1) order Plaintiffs to arbitrate their individual claims; (2) strike Plaintiffs' class action claims; and (3) dismiss or stay this action pending the outcome of arbitration.   The VC Defendants maintain that the enrollment and employment contracts underlying this dispute include an arbitration clause and collective action waiver; thus, by executing those agreements, Plaintiffs agreed to arbitrate, as individuals, any claims arising from their contracts with the VC Defendants.  In response, Plaintiffs request that the court strike the pending motion for failure to comply with the local rules or deny the pending motion as premature.  In the alternative, Plaintiffs request that the court consolidate their claims into one arbitration proceeding.

II.     Analysis

A.     Compliance with Local Rules

Plaintiffs request that the court strike the VC Defendants' motion for failure to comply with the local rules.  Pursuant to the Local Rules of this district, "a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve."  LOCAL RULE CV-7(h).  Additionally, "all motions must be accompanied by a 'certificate of conference' at the end of the motion . . . .  The certificate must state:  (1) that

---

[2] Changes include amending the citizenship of Plaintiffs Anita Trevino, Karlene Carpenter, Tanisha Williams, and Samuel Torres from Texas to California, California, Pennsylvania, and Colorado, respectively; removing Plaintiffs' requests for waivers of summons; adding factual allegations regarding Defendants Willis Stein & Partners, ECA, Monroe Capital, LLC, Avy Stein, and Stuart Reed; and adding Exhibit 8, a sworn affidavit by Aaron Barksdale, the campus president for Brightwood College in Beaumont, Texas, from September 2016 to September 2018.

counsel has complied with the meet and confer requirement . . . ; and (2) whether the motion is opposed or unopposed." LOCAL RULE CV-7(i).  The Local Rules provide exceptions from these requirements when the non-movant has acted in bad faith by failing to meet and confer or when the motion is one of the types of motions listed in Local Rule CV-7(i).

Plaintiffs contend that a motion to compel arbitration is not one of the motions excluded from the meet-and-confer and certificate of conference requirements and, therefore, the VC Defendants' motion should be struck for failure to meet and confer with Plaintiffs and to include a certificate of conference.  Although the title of the VC Defendants' motion suggests that they request only that the court compel arbitration and strike Plaintiffs' class action claims, they also argue that this action should be dismissed (#7, at 2, 11-12).  Moreover, in their response, Plaintiffs state, "[the] VC Defendants failed to prove the separate Arbitration Policy is valid—particularly under the stringent standards of a motion to dismiss." (#12, at 12).  The local rules exclude a motion to dismiss from the meet-and-confer and certificate of conference requirements. LOCAL RULE CV-7(i)(1).  Accordingly, Plaintiffs' request that the court strike the pending motion is denied.

> B.     Enforcement of Arbitration Agreements

Plaintiffs assert breach of contract claims and do not dispute that the parties entered into valid enrollment and employment contracts; however, they challenge the validity of their purported assent to individual mandatory arbitration.  Plaintiffs further argue that the pending motion should be denied as premature because the court must first determine the validity of the arbitration agreement before issuing an order to compel arbitration.  Plaintiffs allege that the arbitration agreements are unenforceable because they are procedurally and substantively unconscionable.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. "Whether a contract requires arbitration of a given dispute is a matter of contract interpretation and a question of law for the court." *Smith v. Transp. Workers Union of Am.*, 374 F.3d 372, 374 (5th Cir. 2004); *see* 9 U.S.C. § 4; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010))); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).

When determining whether the parties agreed to arbitrate the dispute in question, the court employs a two-step analysis: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Papalote Creek II, L.L.C.*, 918 F.3d at 454 (quoting *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016)); *Huckaba*, 892 F.3d at 688; *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).

C.     The Mandatory Arbitration Provisions

With the exception of Anita Trevino and Karlene Carpenter, the Student Plaintiffs executed contracts to enroll at Virginia College campuses, which contained the following arbitration clause:

> Any claim, controversy or dispute arising out of or relating to this Contract or any alleged breach, violation or default of this Contract, together with all other claims,

5

> controversies or disputes of any nature whatsoever, including but not limited to all claims based in tort, fraud, contract, equity, state law, and/or federal law, arising out of or in relation to the Student's enrollment and participation in courses at the college, shall be resolved and settled by binding arbitration administered by the American Arbitration Association . . . .   Notwithstanding the foregoing, you may bring an individual (not class) action in small claims court for claims within the scope of its jurisdiction.

(#7-1, at 5 ¶ 10).  The enrollment contracts, in bold, all-caps font, notify the students that they are waiving their right to bring a lawsuit in court:

> BY SIGNING THIS CONTRACT, THE STUDENT (AND, IF APPLICABLE, HIS/HER PARENT OR LEGAL GUARDIAN) GIVE UP THE RIGHT TO GO TO COURT AND THE RIGHT TO TRIAL BY JURY AND EXPRESSLY ACKNOWLEDGE AND UNDERSTAND THAT HIS, HER OR THEIR RIGHTS AND REMEDIES WILL BE DETERMINED BY AN ARBITRATOR AND NOT BY A JUDGE OR JURY.   THE PARTIES UNDERSTAND THAT A DETERMINATION BY AN ARBITRATOR IS AS ENFORCEABLE AS ANY ORDER AND IS SUBJECT TO VERY LIMITED REVIEW BY A COURT.

*Id.*  Further, all of the Student Plaintiffs signed a separate document, entitled "Arbitration Policy," with the same language using an electronic signature.  *Id.* at 10.[3]  The Arbitration Policy provides, in bold, all-caps font:

> BY ENTERING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM, OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.

Similarly, the VC Defendants contend that the Employee Plaintiffs each executed an "Arbitration Agreement" with VC Defendant ECA and its related entities:

> [T]he parties agree that any dispute, controversy or claiming arising out of or related to this Agreement, the employment relationship between the parties, or the termination of the employment relationship shall be resolved by binding arbitration administered by the American Arbitration Association. . . .   The agreement to arbitrate includes any claims . . . Employee may have against the Company or

---

[3] The enrollment contracts signed by Student Plaintiffs Anita Trevino and Karlene Carpenter do not include an arbitration clause; however, both signed the separate Arbitration Policy (#7-1, at 55, 64).

6

against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities . . . .

(#7-2 at 3 ¶ 1).  The evidence indicates that both of the Employee Plaintiffs electronically signed the Arbitration Agreement.  *Id.* at 6, 9-11.

1.    <u>Existence of Agreement to Arbitrate</u>

Initially, the court must determine whether the parties agreed to arbitrate the dispute in question.  *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *Sharpe*, 769 F.3d at 914.  "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence."  *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012); *see In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019); *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015).  Written arbitration agreements are "prima facie valid under the FAA and must be enforced unless the party opposed to arbitration 'allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract.'"  *Ranzy v. Extra Cash of Tex., Inc.*, No. H-09-334, 2010 WL 936471, at *2 (S.D. Tex. Mar. 11, 2010) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004)); *see Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1622 (2018) ("[A]greements to arbitrate [may] be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011))). If the court determines that a valid agreement exists, the court then determines whether any federal statute or policy renders the parties' claim non-arbitrable.  *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir.), *cert. denied*, 138 S. Ct. 329 (2017); *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195 (5th Cir.), *cert. denied*, 137 S. Ct. 373 (2016).  Although there is a strong federal

7

policy favoring arbitration, "the policy does not apply to the initial determination whether there is a valid agreement to arbitrate," as it is a matter of contract. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *accord Huckaba*, 892 F.3d at 688-89; *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419 (5th Cir. 2014); *Sharpe*, 769 F.3d at 914; *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

Section 2 of the FAA renders an arbitration agreement severable from the underlying contract; thus, federal courts do not consider challenges to the validity of the entire contract when deciding whether an agreement to arbitrate exits. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006)).  In determining the validity of an agreement to arbitrate under the FAA, courts must first apply state law governing contract formation. *Huckaba*, 892 F.3d at 688 (citing *Kubala*, 830 F.3d at 202); *accord In re Poly-Am. L.P.*, 262 S.W.3d 337, 347 (Tex. 2008) (stating that "an agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state"); *see* 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Sharpe*, 769 F.3d at 914.

2.   Applicable State Law

The parties purportedly executed and intended to perform the contracts at issue in Texas, California, Pennsylvania, and Colorado.  Federal courts follow the choice of law rules of the forum state, here Texas.  *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)); *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013); *Int'l Interests, L.P. v.*

*Hardy*, 448 F.3d 303, 306 (5th Cir. 2006) (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004)).  Under Texas law, "the court should look to the law of the place where the contract specifies that the services should be rendered."  *Weber*, 811 F.3d at 772 (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 196).  "When a contract for services gives a place for performance, '[a]s a rule, that factor alone is conclusive in determining what state's law is to apply.'"  *Weber*, 811 F.3d at 772 (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex. 1990)).

Here, the parties do not dispute that Texas law applies to the contracts executed by Student Plaintiffs Karina Garcia, Maria Mata, and Chloe Brooks and the Employee Plaintiffs Marlene Burch and Rozephyr Jean; California law applies to the contracts executed by Student Plaintiffs Anita Trevino and Karlene Carpenter; Colorado law applies to the contract executed by Student Plaintiff Samuel Torres; and Pennsylvania law applies to the contract executed by Student Plaintiff Tanisha Williams.  Under Texas law, to form a binding and valid contract, the following elements must be present:  "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding."  *Huckaba*, 892 F.3d at 689 (citing *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)).  "As to the last element, whether a signature is required to bind the parties is a question of the parties' intent."  *Id.* (citing *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454 (5th Cir. 2013)).  The elements of contract formation are similar in California, Colorado, and Pennsylvania.  *See* CAL. CIV. CODE § 1550; *Kovac v. Farmers Ins. Exch.*, 401 P.3d 112, 116, *cert. denied*, No. 17SC209, 2017 WL

9

3593981 (Colo. Aug. 21, 2017); *In re Estate of Wierzbicki*, 174 A.3d 1061, 1065 (Pa. Super. Ct. 2017), *appeal denied*, 189 A.3d 993 (Pa. 2018).

       3.    Electronic Signatures

Plaintiffs do not deny the existence of valid contracts with the VC Defendants.  Rather, they dispute the authenticity of the typed signatures on the arbitration agreements included among the VC Defendants' exhibits.  Plaintiffs point out that the signature blocks on the enrollment contracts and Arbitration Policies (#7-1) consist of only each student's typed name and the date.  Similarly, the Employee Plaintiffs' arbitration agreements (#7-2) include only the employee's typed name, initials, and the purported signature date.  Plaintiffs Chloe Brooks (#12-2), Anita Trevino (#12-3), Karlene Carpenter (#12-4), Maria Mata (#12-5), and Rozephyr Jean (#12-7) submitted sworn affidavits in which they deny manually typing their names or initials on the documents at issue.[4]  Plaintiffs also claim that they never received a copy of or an opportunity to review the Arbitration Policy.  Consequently, Plaintiffs contend that the VC Defendants' exhibits do not establish that they affirmatively agreed to arbitrate any claims.  In response to Plaintiffs' assertion that their typed names do not show that they agreed to arbitrate any claims, the VC Defendants aver that Plaintiffs signed the agreements electronically.

Texas, California, Pennsylvania, and Colorado have adopted the Uniform Electronic Transactions Act.  *See* CAL. CIV. CODE § 1633.1; COLO. REV. STAT. § 24-41.3-101; PA. CONS. STAT. § 2260.101; TEX. BUS. & COM. CODE § 322.001.  Under the laws of these states, an "electronic signature" is defined as "an electronic sound, symbol, or process attached to or

---

[4] Plaintiffs Karina Garcia, Tanisha Williams, Samuel Torres, and Marlene Burch did not submit affidavits denying that they signed or had notice of the arbitration agreements.

logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record." CAL. CIV. CODE § 1633.2; COLO. REV. STAT. § 24-71.3-102; 73 PA. CONS. STAT. § 2260.103; TEX. BUS. & COM. CODE § 322.002(8). Electronic signatures are legally binding under the statute:

> (a)   A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
>
> (b)   A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.
>
> (c)   If a law requires a record to be in writing, an electronic record satisfies the law.
>
> (d)   If a law requires a signature, an electronic signature satisfies the law.

CAL. CIV. CODE § 1633.7; COLO. REV. STAT. § 24-71.3-107; 73 PA. CONS. STAT. § 2260.303; TEX. BUS. & COM. CODE § 322.007. Furthermore:

> An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

CAL. CIV. CODE § 1633.9(a); COLO. REV. STAT. § 24-71.3-109(1); 73 PA. CONS. STAT. § 2260.305; TEX. BUS. & COM. CODE § 322.009(a). As an initial matter, Plaintiffs do not deny signing the enrollment and employment contracts that they seek to enforce. With the exception of the enrollment contracts governed by California law, all of the contracts include an agreement to arbitrate. As to the separate arbitration agreements, the court finds that the VC Defendants have sufficiently established that Plaintiffs, either personally or by granting an enrollment officer permission, signed the agreements electronically. The Declaration of Kellie Kennedy (#16-1, at 2-13) describes the process utilized by the Student Plaintiffs to sign electronically the enrollment

contracts containing the arbitration clauses (#s 16-1, 17-1).  Likewise, the Declaration of Jennifer

Ligon (#15-2, at 2-11) describes the DocuSign platform used by Employee Plaintiff Rozephyr Jean

and the Workday platform used by Employee Plaintiff Marlene Burch to sign their respective

arbitration agreements (#15-2).  The VC Defendants also provided evidence that Plaintiffs signed

forms consenting to the use of electronic signatures in order to submit their enrollment and

employment application documents electronically.  Thus, the court finds that the VC Defendants

have established, by a preponderance of the evidence, that Plaintiffs electronically signed the

agreements at issue and that their electronic signatures are legally binding.

### 4.    Arbitration Agreements with Employees Under Texas Law

The Employee Plaintiffs are citizens of Texas whose employment contracts were to be

performed in Texas.  Even if the Employee Plaintiffs had not used an electronic process to sign

the agreements, "[a]greements to arbitrate disputes between employers and employees are

generally enforceable under Texas law."  *In re Poly-Am., L.P.*, 262 S.W.3d at 348; *accord*

*Kubala*, 830 F.3d at 202.  Indeed, Texas law has historically favored such agreements.  *In re*

*Poly-Am., L.P.*, 262 S.W.3d at 348 (citing *Advance PCS Health L.P.*, 172 S.W.3d 603, 608 (Tex.

2005); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996); *Cantella & Co. v. Goodwin*,

924 S.W.2d 943, 944 (Tex. 1996)).  "An employer may enforce an arbitration agreement entered

into during an at-will employment relationship if the employee received notice of the employer's

arbitration policy and accepted it."  *In re Dallas Peterbilt, Ltd., LLP*, 196 S.W. 161, 162 (Tex.

2006) (citing *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370, 375 (Tex. App.—El Paso 2005,

no pet.)); *accord Kubala*, 830 F.3d at 201.  Texas law does not require a signature to demonstrate

acceptance.  *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W. at 163.  Rather, "[a]n at-will employee

who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *Id.* (citing *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d at 373); *accord Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 838 (Tex. App.—Dallas 2013, no pet.).

Here, the VC Defendants submitted evidence indicating that the Employee Plaintiffs received notice of the arbitration agreements.  It is undisputed that the Employee Defendants were at-will employees and that they continued to work at Virginia College campuses after receiving notice of the arbitration agreements.  The court finds that the VC Defendants have established an alternative basis for the existence of an arbitration agreement with the Employee Plaintiffs. Because the law governing arbitration agreements in the employment context is clear, the court need not consider whether the Employee Plaintiffs' electronic signatures of the agreements to arbitrate are unconscionable.

### D.   Unconscionability of Arbitration Agreements

The Student Plaintiffs assert that enforcement of the arbitration clause in the enrollment contracts and separate arbitration agreements would be unconscionable.  Contracts of adhesion, however, are not inherently unconscionable.  *See Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016); *ReadyOne Indus., Inc. v. Lopez*, 551 S.W.3d 305, 314-15 (Tex. App.—El Paso 2018, pet. denied).  For the reasons explained below, the Student Plaintiffs fail to establish that mandatory arbitration is unconscionable.

Under Texas law, "[a]rbitration agreements may be either substantively or procedurally unconscionable, or both." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)); *see In re*

*Poly-Am., L.P.*, 262 S.W.3d at 348.  "Substantive unconscionability refers to the fairness of the

arbitration provision itself, whereas procedural unconscionability refers to the circumstances

surrounding adoption of the arbitration provision."  *Royston, Rayzor, Vickery, & Williams, LLP*,

467 S.W.3d at 499 (quoting *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)).

In determining whether an agreement is unconscionable, Texas courts consider various factors that

"aim to prevent oppression and unfair surprise."  *In re Poly-Am., L.P.*, 262 S.W.3d at 348; *see*

*Philadephia Indem. Ins. Co. v. SSR Hosp., Inc.*, 459 F. App'x 308, 314 (5th Cir. 2012).  Some

of the factors the court may consider include:

> (1) the entire atmosphere in which the agreement was made; (2) the alternatives,
> if any, available to the parties at the time the contract was made; (3) the non-
> bargaining ability of one party; (4) whether the contract was illegal or against
> public policy; and (5) whether the contract is oppressive or unreasonable.
> Additional factors that may contribute to finding an agreement procedurally
> unconscionable include (1) knowledge of the stronger party that the weaker party
> will be unable to receive substantial benefits from the contract and (2) knowledge
> of the stronger party that the weaker party is unable reasonably to protect his
> interests by reason of physical or mental infirmities, ignorance, illiteracy, or
> inability to understand the language of the agreement.

*Philadephia Indem. Ins. Co.*, 459 F. App'x at 314 (citing *Ski River Dev., Inc. v. McCalla*, 167

S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied)); *ReadyOne Indus., Inc.*, 551 S.W.3d at

314-15 (Tex. App.—El Paso 2018, pet. denied) (citing *Delfingen US-Tex., L.P. v. Valenzuela*, 407

S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.)).

Under California law, "the doctrine of unconscionability has both a procedural and a

substantive element, the former focusing on oppression or surprise due to unequal bargaining

power, the latter on overly harsh or one-sided results."  *Baltazar*, 367 P.3d at 11 (quoting *Sonic-*

*Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 194 (Cal. 2013), *cert. denied*, 573 U.S. 904 (2014)).

Although both procedural and substantive unconscionability must be present, "the more

14

substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)). An arbitration agreement in a contract of adhesion may be procedurally unconscionable if it involves surprise, duress, or manipulation and substantively unconscionable if it involves terms that are "artfully hidden," such as where an arbitration agreement incorporates terms by reference that are not included in, or attached to, the agreement. *Id.* (indicating that failure to provide a copy of an arbitration agreement's terms did not make an arbitration agreement procedurally or substantively unconscionable).

Likewise, unconscionability under Colorado law requires a showing of both procedural and substantive unconscionability. *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011) (quoting *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008)). Colorado courts have considered several factors in determining whether a contract is unconscionable:

> (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

*Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)); *Bailey*, 255 P.3d at 1055 n.9. The first, second, third, and sixth factors involve procedural deceptiveness; the fourth and fifth factors are relevant to substantive

deceptiveness, and the seventh factor deals with both procedural and substantive deceptiveness. *Bailey*, 255 P.3d at 1055 n.9 (quoting *Davis*, 712 P.2d at 991).

Under Pennsylvania law, an agreement is unconscionable where there is both "a lack of meaningful choice in the acceptance of the challenged provision"—procedural unconscionability—"and the provision unreasonably favors the party asserting it"—substantive unconscionability. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Penn. 2007); *see Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012); *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018). Like California and Colorado, Pennsylvania requires both substantive and procedural unconscionability, suggesting that a "sliding-scale approach . . . where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required." *Styczynski*, 340 F. Supp. 3d at 541 (quoting *Quilloin*, 673 F.3d at 230).

### 1.   Procedural Unconscionability

As a representative example, Plaintiffs recount Chloe Brooks's experience with a Brightwood College employee during her enrollment process. They allege that the employee had an exclusive view of the documents on his computer screen as he verbally explained enrollment and that the employee did not mention the arbitration provisions. Chloe Brooks purportedly caught three brief glimpses of the employee's screen, and she never received a copy of either document. Electronic records indicate that she accepted the terms of enrollment in short succession. The Student Plaintiffs allege that they:

> (1) were not told about the arbitration clause within the Tuition Agreement during their enrollment meetings; (2) were not provided the opportunity to view the arbitration clause within the Tuition Agreement; (3) were not told about the separate Arbitration Policy; (4) did not see the separate Arbitration Policy; (5) were

not provided an opportunity to read the separate Arbitration Policy; (6) were not
given the opportunity to click "I agree" to the [A]rbitration [P]olicy, (7) were not
given an opportunity to opt out of arbitration, and (8) were not required to initial
their personal, intentional election of arbitration.

(#12, at 18). The Student Plaintiffs' contentions regarding the enrollment process do not persuade

the court that the arbitration provisions are procedurally unconscionable. Even assuming all of

the Student Plaintiffs shared Chloe Brooks's enrollment experience, they do not adduce adequate

facts to establish procedural unconscionability under Texas, California, Colorado, or Pennsylvania

law. The Student Plaintiffs did not have the option of negotiating the terms of their enrollment

contracts; however, there is no indication that the Student Plaintiffs lacked the capacity to

understand the agreement, that mandatory arbitration came as an unfair or artfully hidden surprise

in the contract, or that their signatures were obtained by deception. The arbitration clause in the

enrollment contract, even if found on the second or third page of a seven-page contract, is

emphasized in bold, capital letters. The arbitration agreement is the sole subject of the stand-alone

Arbitration Policy. Despite the Student Plaintiffs' denial of having access to the arbitration

agreements, it appears that their enrollment documents were available through the student portal.

Under the law of each of the relevant states, a person who signs a contract is presumed to

know the contents of a contract signed by him, and failure to read an arbitration agreement will

not allow him to avoid an arbitration clause. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d

1061, 1079 (Cal. 1996); *Bailey*, 255 P.3d at 1054 (quoting *Davis*, 712 P.2d at 990 n.7); *Wert v.

Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1260-61 (2015), *cert. denied*, 136 S. Ct. 1201

(2016); *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (citing *In re Merrill Lynch Tr.

Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007)). Here, the Student Plaintiffs cannot avoid mandatory

arbitration by alleging that they executed the arbitration agreements without reading them. Even

17

if the Student Plaintiffs claim that they were not informed of the arbitration agreements, for reasons explained in the next section, the contracts governed by California, Colorado, and Pennsylvania law, which require showing both procedural and substantive unconscionability, are enforceable.  Texas courts, however, recognize that an agreement may be either procedurally or substantively unconscionable.  As to the Student Plaintiffs from Texas—Karina Garcia, Maria Mata, Chloe Brooks—the VC Defendants provided records with their handwritten initials and signatures acknowledging that they read, executed, and understood, among other documents, the enrollment contract, Arbitration Policy, and electronic signature consent form (#16-1, at 44, 63, 79).  Thus, the evidence does not support a finding that the arbitration agreements were procedurally unconscionable.

## 2.    Substantive Unconscionability

Plaintiffs contend that the arbitration agreements are substantively unconscionable because the cost of arbitration is prohibitive.  Their arguments are baffling because the parties do not dispute who is responsible for the cost of arbitration.  The enrollment and employment contracts state, "The parties shall, respectively, pay any expenses incurred as American Arbitration Association [("AAA")] fees, administrative fees, arbitrator fees, mediation fees, hearing fees, and postponement/cancellation fees in accordance with the rules and procedures adopted by the [AAA]."  Pursuant to AAA rules, consumers such as the Student Plaintiffs are each responsible for only a $200.00 filing fee.  Plaintiffs complain that the cost of arbitration, before expenses, would total $1,400.00 for the seven named Student Plaintiffs, and $3,800,000.00 for the proposed class, an estimated 19,000 students.  Similarly, Plaintiffs argue that a $300.00 filing fee for each of the named Employee Plaintiffs, before expenses, would total $600.00, and $105,000.00 for the

proposed class, an estimated 350 employees.  There is no indication that Plaintiffs' individual filing fees with the AAA are cost-prohibitive.  The fee to file a civil action in the United States District Court for the Eastern District of Texas is $400.00.  Plaintiffs also express concern about the fee-splitting language—that the parties shall pay AAA fees "respectively"—in the arbitration agreements, which they contend conflicts with AAA rules requiring the business to pay AAA fees after the claimant pays the initial filing fee.  There is no conflict because the remainder of the sentence specifies that any such fee-splitting will follow AAA rules.  Plaintiffs have agreed to forego their argument regarding costs as a basis of substantive unconscionability if the arbitration expenses are allocated according to AAA rules.  (#12, at 21, 23, 24).  As there is no dispute over the applicability of AAA rules, there is no substantive unconscionability based on the allocation of arbitration fees.

Plaintiffs next speculate that the cost for each Student Plaintiff, if the VC Defendants were to prevail, "could easily exceed $25,000 per individual arbitration," pointing out language in the enrollment contracts that provides:

> In any legal action permitted by this Contract or arbitration between the parties arising out of this Contract and the subject matter contained herein, the College, if it prevails, shall be entitled to recover its reasonable attorneys' fees in addition to any other relief to which it may be entitled or awarded.

They also argue that the arbitration agreements are unenforceable because the meaning of "prevail" is vague.  The VC Defendants note that nothing in this provision prevents Plaintiffs from recovering attorney's fees if they prevail in arbitration.  Moreover, the VC Defendants specifically state, "Defendants agree to waive the attorney-fee provision" (#15, at 15).  Accordingly, this provision cannot be the basis of substantive unconscionability.  Because Plaintiffs cannot establish

19

that the arbitration agreements are procedurally or substantively unconscionable, they cannot avoid

mandatory arbitration under the laws of Texas, California, Colorado, or Pennsylvania.

      E.     Scope of the Arbitration Agreement

      Plaintiffs request that, in the event the court determines that the arbitration agreements are

valid and enforceable, the court allow Plaintiffs to proceed against the VC Defendants in a

consolidated arbitration proceeding and to maintain their claims against parties not specifically

named in their respective contracts.  "After proving that a valid arbitration agreement exists, the

party seeking to compel arbitration must show that the dispute falls within the scope of the

agreement. . . .  If the trial court finds that a valid agreement to arbitrate exists and that the claims

asserted fall within that agreement, it is required to compel arbitration." *Halliburton Energy*

*Servs., Inc. v. Ironshore Specialty Ins. Co.*, 621 F.3d 522, 531 (5th Cir. 2019).

      The Student Plaintiffs' arbitration clauses explicitly state that "[a]ny claim, controversy or

dispute arising out of or relating to this Contract or any alleged breach . . . shall be resolved and

settled by binding arbitration . . . ."  With respect to the class action waiver, the agreement states:

> The parties agree that any dispute between the parties shall not be adjudicated as
> a class action or a consolidated class arbitration proceeding either in court or under
> the rules of the American Arbitration Association.  The right of any party to pursue
> a class action for any dispute subject to arbitration shall be waived to the fullest
> extent permitted by law.

(#7-1, at 5 ¶ 10, 10).  The Employee Plaintiffs executed agreements containing similar language.

(#7-2, at 3).  Here, a valid arbitration agreement exists and the parties' dispute falls within the

scope of "[a]ny claim, controversy or dispute arising out of or relating to this Contract or any

alleged breach."  Thus, Plaintiffs' waiver of their right to pursue a class action for their claims,

which are subject to arbitration, is permitted by law.   The VC Defendants' request to strike

Plaintiffs' class action claims is granted.

Plaintiffs ask that, if the court finds that arbitration is required, the court compel arbitration

of their claims against the VC Defendants only and retain their class action claims against the

defendants who are not parties to the arbitration agreements.   In support of their request, Plaintiffs

cite to language in the enrollment contract, outside of the arbitration clause, that states:   "The

terms and provisions of this Contract are intended solely for the benefit of each party hereto and

their respective successors or permitted assigns, and it is not the intention of the parties hereto to

confer any third party beneficiary rights upon any other person or entity."   (#7-1, at 8 ¶ 19).[5]

According to Plaintiffs, this provision shows that the parties did not intend to arbitrate claims

against strangers to the arbitration agreements.   Nevertheless, the Student Plaintiffs agreed to

arbitrate "[a]ny claim, controversy or dispute arising out of or relating to [the enrollment contract]

or any alleged breach," and the Employee Plaintiffs agreed to arbitrate "any dispute, controversy

or claiming arising out of or related to [the Arbitration] Agreement, the employment relationship

between the parties, or the termination of the employment relationship."   All of Plaintiffs' claims

are asserted against the VC Defendants, and no claim is exclusive to a nonsignatory defendant.

The arbitration agreements executed by Plaintiffs are enforceable, and their claims against every

defendant—including defendants who were not signatories to the arbitration agreements—fall

within the scope of the arbitration agreement.   "Congress has instructed that arbitration

agreements . . . must be enforced as written."   *Epic Sys. Corp.*, 138 S. Ct. at 1632.   Hence, the

arbitrability of Plaintiffs' claims against Defendants Willis Stein & Partners, L.L.C.; Monroe

---

[5] Plaintiffs do not identify similar language in the Employee Plaintiffs' contracts.

21

Capital, LLC; Avy Howard Stein; Theodore Koenig; Jackie Baumann; and Erin Shea is to be determined by the arbitrator.

The FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement . . . the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  "If a dispute is subject to mandatory grievance and arbitration procedures, then the proper course of action is usually to stay the proceedings pending arbitration." *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015).  As the VC Defendants point out, the United States Court of Appeals for the Fifth Circuit allows dismissal of a case "when all of the issues raised in the district court must be submitted to arbitration." *Id.* at 250 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018).  Here, because the arbitrability of certain claims against nonsignatories to the parties' respective contracts is an issue to be determined in arbitration, the court concludes that a stay, rather than dismissal, of the pending litigation is appropriate.

III.    Conclusion

Consistent with the foregoing analysis, the VC Defendants' Renewed Motion to Compel Arbitration (#36) is GRANTED.  Plaintiffs' request that the court strike the pending motion for failure to comply with the local rules is DENIED.  The court has determined that Plaintiffs executed valid arbitration agreements and, therefore, Plaintiffs' contention that the VC Defendants' motion should be denied as premature is OVERRULED.  In addition, Plaintiffs' request that the court consolidate their claims in one arbitration proceeding is DENIED, as their

right to proceed in a single proceeding is a matter to be determined in arbitration.  It is further

ordered that this case is STAYED pending the completion of arbitration.

SIGNED at Beaumont, Texas, this 5th day of August, 2019.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE